IN THE

# SUPREME COURT

OF

# MINNESOTA.

---◆---

## JANUARY TERM, 1872.

---◆---

JOSEPH H. THOMPSON

*vs.*

DAVID BICKFORD, impleaded with Isaac I. Lewis.

Plaintiff is the assignee of certain judgments against A, who, being insolvent by reason of these and other debts, conveyed his property to B, for the purpose of putting it out of the reach of his creditors and securing some property for himself, with the connivance therein of B; it being mutually understood between them that B should hold the property in secret trust for A for the purpose aforesaid, but with the understanding that it should also stand as security to B for a note of A's and other indebtedness of his to B, no settlement being had to ascertain how much he owed him.

Afterwards, in continuation and as a part of such former transaction, an accounting was had, the amount of such indebtedness ascertained, and A gave his notes therefor, and B gave A a bond for a deed of one parcel of the property on payment of one of the notes, the understanding being, however, that said parcel should be held and managed for A's benefit and the rents applied to the payment of taxes and incumbrances thereon, so that it should not be sacrificed and lost to A, but the whole property to be held in trust for him, so as to protect the same for him against his said creditors, subject to the payment of his debt to B. Subsequently B sold and conveyed said parcel to a *bona fide* purchaser without notice, and A applied to B for a settlement and part of the proceeds, which he refused, but gave up the notes and A gave up the bond.

*Held*, that as against A's creditors and their assigns the conveyance was fraudulent and void, and that, as the above facts present a case of actual fraud on the part of B, as well as A, said conveyance is, in equity as well as at law, void *ab initio*, to be set aside entirely as against such creditors and their assigns, and cannot stand as security to B. As to them the property is A's, and they have no concern with any notes or accounts that B may have against him.

The rents and profits and the proceeds of said parcel sold are liable to the same extent as the land, and B is accountable for them to the plaintiff, without deduction for his said demands or for money paid for taxes, or to extinguish liens or incumbrances placed by A thereon. So if the proceeds are traceable into any specific stocks or securities, plaintiff may have them sold to satisfy his demands.

It would make no difference if B, by agreement with A, had taken all but said parcel in payment of his demands against him. As against plaintiff the land would still be A's, just as though no such agreement had been made.

It is no objection, therefore, to an order granting plaintiff relief against all the property, that the complaint alleges that such an agreement was made. B claiming in his answer to have been the *bona fide* purchaser for value of the whole of it, and the statute empowering the court to grant the plaintiff any relief consistent with the case made by the complaint, and embraced within the issue.

Said parcel was subject to a mortgage from A to F, which was foreclosed by advertisement, and the equity of redemption on the sale would have expired October 3, 1861. August 7th, 1861, F, in consideration of a trifle over the sum then due on the sale, quit-claimed to B by deed, all his right, title and interest in said property, the deed expressly stating, also,

Thompson v. Bickford.

that the deed was given and received upon redemption of said premises from said mortgage, and also on payment of the taxes paid thereon by F. Oct. 29, 1861, F assigned to B the certificate of sale issued to him on said foreclosure. *Held*, that these instruments vested no title in B, as against the plaintiff.

Before the revision a judgment in a foreclosure suit for the sale of the mortgaged premises, that, if the proceeds were insufficient to pay the debt and costs the report of sale should specify the amount of the deficiency; that, upon the confirmation of the report, the debtor pay the plaintiff in the suit the amount of the deficiency, with interest from the date of the report; and that plaintiff have execution therefor, was a final judgment, though the money judgment against the debtor could not be docketed till the amount of the deficiency was ascertained.

The clerk, at the time it was rendered (1860,) kept two books for the entry of judgments, one styled "judgment book," the other "decree book," and the judgment was entered in the latter. *Held*, that this was a mere irregularity not affecting the substantial rights of the parties and to be disregarded.

Judgment docketed in Hennepin county in favor of Sumner W. Farnham. A certified copy of transcript in Carver county of judgment corresponding in every respect with the judgment in Hennepin, except that the plaintiff's name was therein given as "Samuel" instead of "Sumner," is competent evidence to prove the docketing of said judgment in Carver county.

An execution is not void for want of the style prescribed by the constitution. This is a defect in matter of form, and susceptible of amendment, and can only be taken advantage of by a defendant within the time and in the manner prescribed by law.

This action was brought in the district court for Hennepin county, and was tried by the court without a jury. The defendant Bickford, who alone answered the complaint, appeals to this court from the decretal order of the district court, directing that the account to the plaintiff for the proceeds of certain real estate fraudulently conveyed to him by the defendant Lewis. The case is fully stated in the opinion.

BEEBE & SHAW, for Appellant.

ATWATER & FLANDRAU, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The complaint in this action alleges in brief that Lewis, being insolvent, for the purpose of defrauding his creditors, mortgaged a large amount of real estate to Bickford, and shortly after, in pursuance of the same design, conveyed the same and some other real estate to him, the parties shortly afterwards agreeing that Bickford should take all thereof in satisfaction of Lewis' indebtedness to him, except an undivided half of lot 4, block 12, in Minneapolis, which Bickford, who owned the other moiety, should hold on a secret trust for Lewis, to collect the rents and profits for his use, sell the said lot to the best advantage, and pay over one-half the proceeds of such sale to Lewis.

That Bickford sold it, but has not paid over the price or the rents and profits received by him to Lewis, but claims it as his own, with the fraudulent intent of hindering and delaying Lewis' creditors from collecting their demands against him.

The plaintiff, who alleges himself to be the owner of certain judgments against Lewis, prays that a trust may be declared in his favor to the extent thereof, in said proceeds and rents and profits, and that Bickford pay the same to him. The complaint contains a prayer for general relief.

The court below finds as facts substantially as follows :

That in August, 1858, Lewis, owning a large amount of real estate in Hennepin county, including said undivided half of lot 4, and being insolvent, and apprehensive that his creditors would seize it, and desirous of placing it beyond their reach and securing some property for himself, for that purpose, and with the connivance of Bickford his partner, mortgaged said property to him, to secure the sum of $5,123, on four years' time.

Lewis then owed Bickford $1,500 on note, and other debts, but no settlement was then had to ascertain how much he owed him ; but the mortgage was for the purpose aforesaid,

with the understanding at the time, that it should also stand as security for said existing indebtedness, the property being at that time worth very much more, and so understood to be by the parties.

That in October, 1858, Lewis took up said mortgage and substituted therefor a warranty deed of the same, and some additional property, (embracing all that he had of any value,) no accounting being had, but it being mutually understood that Bickford should hold the property for the same purposes under the deed as under the mortgage, and that it should be and continued to be. Lewis' property, except that sufficient might be applied in satisfaction of his debts aforesaid to Bickford, said transaction being but a continuance of the original scheme, for the purpose of more effectually securing the property against said creditors.

In November, 1858, the parties had an accounting, upon which the sum of $2,993.50 was found due from Lewis to Bickford, this being in continuance of and a part of said former transactions, Lewis giving his notes for that amount, one for $1,500 and one for $1,493.50, it being distinctly understood that said deed was not taken in satisfaction of said debts ; but said Bickford allowed Lewis to arrange the matter in his own way and in trust for himself, saving to said Bickford the amount of said debt.

The parties understood that said undivided half of lot 4 in particular was to be held and managed for the benefit of Lewis, the rents being applied to the payment of the taxes and incumbrance thereon, so that it should not be sacrificed and lost to Lewis, but the whole of the property was to be held in trust for Lewis and to protect the same for him against his said creditors, subject to payment of the indebtedness of Bickford.

As a part of the transaction Bickford gave Lewis a bond

Thompson v. Bickford.

for a deed of said undivided half of lot 4, and other portions of said property, on payment of said note for $1,500.

The prime object of all the above transactions, thus consummated, on Lewis' part, was to place the property beyond his creditors' reach and secure a beneficial interest therein to himself, of which Bickford was aware and was willing thus to aid Lewis, he to be secured thereby as aforesaid.

Lewis received the rents of said undivided half of lot 4, till January 1st, 1859, and thereafter Bickford received them; and in 1865, Bickford sold and conveyed the whole of said lot 4 he owning the other moiety, for $10,000 in cash. The complaint not charging, and there being no proof of notice, the presumption is that the purchaser bought in good faith without notice. In 1866, Lewis applied to Bickford for a settlement and part of the proceeds of said sale, which he refused, but gave him up his notes and he gave up the bond aforesaid.

Upon these facts, there can be no doubt whatever that as against the said creditors of said Lewis, the said conveyance was fraudulent and void, under *Comp. Stat. ch.* 51, *sec.* 1, as made with intent to hinder, delay and defraud them, and equally void as against the assignees of such creditors *Comp. Stat. ch.* 51, *sec.* 3; *Gen. Stat. ch.* 41, *sec.* 19.

The facts, moreover, present a case of *actual* fraud on the part of Bickford, as well as Lewis.

This being so, the conclusion of law which the court below draws, viz.: that said transfer to Bickford is void as to the entire interest therein sought to be conveyed and held in trust for Lewis, except as to such portion of the said property or the value or proceeds thereof, as might be necessary to satisfy the actual existing indebtedness of Lewis to Bickford as above mentioned, and the interest and his necessary advances and expenses in and about the said property, is erroneous as respects said indebtedness of Lewis to Bickford.

Thompson v. Bickford.

In equity, a conveyance, set aside as constructively fraudulent, is upheld in favor of one not guilty of actual fraud to the extent of the actual consideration, and is vacated only as to the excess; but if there be actual fraud, there is no differ ence between law and equity. The conveyance is considered as void *ab initio*, and set aside entirely, and cannot stand as security to the fraudulent grantee. It is the same thing as if no such deeds had ever been executed. 1 *Am. Lead. Cases*, *pp.* 49, 50; *Sands vs. Codwise*, 4 *Johns.* 536.; *Bean vs. Smith*, 2 *Mason*, 252; *Haines vs. Sumner*, 2 *Pick.* 129, 137; *Twyne's Case*, 1 *Smith Lead. Cases*, 1.

" I presume there is no instance to be met with of any reimbursement or indemnity afforded by a court of chancery to a *particeps criminis*, in a case of positive fraud." *Per Kent, Ch. J. in Sands vs. Codwise*, (*supra*) *p.* 598.

It is unnecessary to say that the same principle applies to the proceeds of the undivided half of lot 4, as would have applied to the land itself, if Bickford had not sold it. *Sands vs. Codwise, supra.*

It follows that the court below erred in the further conclusion, that in the matter of the disposition of the said property to said Bickford, as above found, he has occupied the position of a mortgagee in possession, as to the creditors of said Lewis, and is accordingly liable to account under the direction of the court for the said property and the proceeds thereof, and the rents, issues and profits of the same, to the end that the same may be applied to the satisfaction of the judgments of plaintiff, except so far as may be necessary to pay the said Bickford said demand and any sums advanced by him for taxes, and to extinguish liens or incumbrances.

The plaintiff does not stand in Lewis' shoes—in respect of any agreement between Lewis and Bickford as to this property. So far as Bickford has not sold the property, the plaintiff might

either levy his execution thereon and sell, or come into equity to set the conveyance aside and then sell. As to him it is Lewis' land, and he has no concern whatever with any notes or accounts that Bickford has against Lewis. The proceeds of any land sold are liable to the same extent as the land was. So if the money could be traced into any specific stock or securities, the plaintiff might have them sold to pay his debt, in the same way as if they stood in Lewis' name.

It is therefore obvious, not only that the plaintiff has no more concern with Lewis' said debt to Bickford than with his indebtedness to any one else, but it results also from these considerations that the allegation in plaintiff's complaint, that, by agreement, Bickford had taken all the land but said moiety of lot 4 in payment of his demand against Lewis, is really immaterial.

If such were the fact, the land, as against plaintiff, would still be Lewis' land just as much as it was before such agreements were made. A verbal agreement between them would not pass the title from Lewis to Bickford, and the deed, under which alone he could claim the title, is no deed, so far as plaintiff is concerned. The remark of Ch. J. Kent, that it would not become a court of equity to take a single step to save harmless a party detected in a fraudulent combination to cheat, would apply with as much force to this as to the agreement found by the court to have existed. "No right can be deduced from an act founded in actual fraud." 4 *Johns.* *p.* 599.

The defendant says that, upon the plaintiff's own showing, the land so agreed to be taken in full of Bickford's demands, was honestly and fairly purchased by the latter and absolutely belongs to him.

What is there more fair or honest about such an agreement than there would have been in respect of an agreement that the property should stand as security for so much cash pres-

Thompson v. Bickford.

ently advanced by Bickford to Lewis ?   Yet no such agree-
ment could stand.

It would seem then that the defendant's objection to the order
appealed from, viz.: that the relief granted is unwarranted
because it extends to *all* the land, as well as said moiety of
lot 4, is not well taken.

The relief granted to the plaintiff, if there is no answer,
cannot exceed that which he has demanded in his complaint ;
but in any other case the court may grant him any relief con-
sistent with the case made by the complaint and embraced
within the issue.   *Gen. St., ch.* 66, *sec.* 246.

If the plaintiff would be entitled to relief against the land,
whether Bickford had agreed to take it for his debt or not,
it is certainly consistent with the case made by the complaint
to grant it.   And since defendant claims to be the *bona fide*
purchaser for value of *all* the property, such relief is as
clearly embraced within the issue.

As there was competent evidence reasonably tending to
support the findings of fact, it is not for us to review them.

A further objection to the order arises out of the following
facts :

When Lewis put this property into Bickford's hands said
moiety of lot 4 was subject to a mortgage to one Fletcher,
who afterwards foreclosed it by advertisement, and the equity
of redemption would have expired on October 3d, 1861.   But
on August 7th, 1861, Fletcher and wife, for the expressed
consideration of $1,200, (the amount actually due on said
foreclosure being a trifle less,) executed a deed thereof to
Bickford, whereby they quit-claimed to him all their right,
title, interest and estate in said property.   "This conveyance
being given and received upon the redemption of the above
described premises from the mortgage given thereon by Isaac
I. Lewis and Georgianna Lewis his wife, to said Fletcher,

VOL. XIX.—4

and also in payment of the taxes paid on said premises by said Fletcher." Upon the 29th of October, 1861, said Fletcher assigned to said Bickford the certificate of sale upon foreclosure.

The defendant contends that he derived title free from claims of Lewis' creditors, by the assignment of certificate and quit-claim deed.

The assignment was ineffectual. The quit-claim deed had already *purported* to operate, as a release and discharge of the incumbrance, and defendant has no equity to have it operate differently.

Plaintiff claims to be the assignee of a judgment in favor of one Winslow against Lewis, and the court finds that judgment was rendered in favor of said Winslow and against said Lewis, on the 25th of February, 1860, for the sum of $1,158, being deficiency for which Lewis was adjudged to be personally liable after sale of mortgaged premises upon foreclosure.

The plaintiff gave in evidence at the trial the judgment roll in said action, which was objected to, on the ground that said roll does not show any judgment ever rendered, which objection was overruled and defendant excepted.

The roll contains the ordinary proceedings according to the then practice in an unopposed suit to foreclose a mortgage, ending with a judgment which is signed, (as was then customary,) by the judge, and whereby, after reciting that the sum of $4,633.33 is due the plaintiff, "it is ordered, adjudged and decreed, that the mortgaged premises be sold at auction by the referee therein appointed; * * * * and that, if the proceeds of the sale are insufficient to pay the debt and costs, the referee specify the amount of such deficiency in his report; and that, upon the coming in and confirmation of said report, said defendant Lewis, who was personally liable for the mortgage debt," " do pay the plaintiff the amount of such deficiency

Thompson v. Bickford.

as aforesaid, with interest from the date of such report, and that the plaintiff have execution therefor."

It contains also all the other usual provisions in a judgment of foreclosure, as the practice then was; as for instance, that on such sale defendants and those claiming under them be forever barred of all equity of redemption in the premises; that the referee execute the usual deed to the purchaser, &c.

The referee reported a deficiency of $1,142.58, and by an order dated Feb. 25th, 1860, the report of the referee is confirmed, and it is ordered that defendant Lewis pay to the plaintiff the said sum, and that he " have judgment therefor." ·

· The defendant objects that the "judgment" so called is but an interlocutory decree against all the parties.

This position is not tenable.   It is a final judgment and then rendered, though not perfected till entered.   3 *Minn.* 207 ; 9 *Minn.* 318 ; 13 *Minn.* 46.

The practice in foreclosure suits was then regulated, (so far as this point is concerned,) by *Comp. Stat. ch.* 83, *sec.* 8 *to* 24.

By section 9, the court in suits for foreclosure had power to decree a sale, and " on the coming in of the report of sale the court shall have power to decree and direct the payment by the mortgagor of any balance of the mortgage debt that may remain unsatisfied after a sale of the mortgaged premises, in the cases in which such balance is recoverable at law, and for that purpose may issue the necessary executions, as in other cases, against other property of the mortgagor."

This is taken from the New York Rev. Stat.—2 *N. Y. Rev. Stat.* 191, § 152.

It was held in New York in 1840 that the usual decree for the payment of the deficiency upon the confirmation of the report of sale, in case it should appear from such report that the proceeds of the mortgaged premises were not sufficient to pay the debt and costs, was proper under the provisions of the

Revised Statutes on this subject, and that it was not necessary to wait till after the sale of the mortgaged premises before the contingent decree for the payment of such deficiency could be made. *McCarthy vs. Graham*, 8 *Paige*, 480.

Along with the statute we naturally adopted the practice thus, and for aught we see correctly, held proper under it in that State. When the court of chancery was abolished in this territory the " decree " necessarily became a " judgment," but that did not affect the regularity of the practice under said statute, nor was any change made, till the revision repealed the law itself. The money judgment of course could not be docketed (*Comp. Stat. ch.* 61, § 76) till the amount was ascertained upon the coming in of the report of sale. So a judgment for costs cannot be docketed till the costs are taxed, but that does not make it necessary that they should be taxed before judgment is rendered therefor.

The plaintiff afterwards gave in evidence, the defendant objecting, a book from the records of the above named court designated as " Book of Decrees, Letter A," and read therefrom the entry of the above mentioned judgment. It was admitted that said alleged judgment is not entered in any other judgment book, and that the above was the only evidence thereof except the judgment roll and docketed entry.

The objection is, that it is no judgment, and cannot be pleaded as a judgment, till entered in the judgment book.

The respondent states, and the presumption is, that the clerk also keeps a book for the entry of judgments styled a judgment book. The respondent also states, and it is not denied, that the clerk entered judgments at law in one and judgments in equitable actions in the other.

There could be no more objection in principle to his thus keeping two judgment books, than to his keeping one book, as both register of actions and judgment book. (14 *Minn.*

Thompson v. Bickford.

464.)   And assuming the fact to be as the respondent states, though technically it would be as improper, after the abolition of separate equity jurisdiction, to call a book used for the entry of judgments in equitable actions a "decree book," as to call such a judgment a "decree," yet when we consider how common it still is in practice to style such judgments "decrees," we can easily understand how such a title might have been applied to, or perhaps retained in respect of the book in question.

So far from misleading, there could be *practically* no more mistake as to its contents, than if it had been labelled "judgments in equitable actions." Nor do we perceive why a judgment entered therein would not be a judgment *entered*, in the eye of the law, as much as one entered in a book used both as a register of actions and for the entry of judgments, with no distinctive title, as, so far as the record shows, was the case of the book in *Jorgensen vs. Griffin*, 14 *Minn.* 464.

Confining ourselves, however, to the return, the facts in this case are merely that the clerk kept two books, one styled "judgment book," and the other "decree book," and that this judgment was entered in the latter. If then the question be asked, whether that circumstance affects the validity of this judgment, the only possible answer would seem to be that the labelling of the book was a mere irregularity not affecting the substantial rights of the parties and must be disregarded.

The observations of the court in *Jorgenson vs. Griffin* apply here to the facts stated by the respondent, as well as those appearing upon the return. The great object of the statute being to require a record of the matters prescribed therein, as permanent and authentic evidence of the proceedings, to which parties may have access and of which they have notice, if the record of the judgments exists, the substantial purpose of the statute is accomplished whether the entries are in one

book or two, and whether one of those books be styled judgment book or not, provided its title do not mislead and which is not the case here.

Plaintiff alleged himself to be the assignee also of a judgment rendered in Hennepin county, in 1859, in favor of Sumner W. Farnham vs. I. I. Lewis, and which was docketed in Carver county, and execution issued thereon to Carver county. To prove that it was docketed in Carver county, he introduced a certified transcript in Carver county of judgment corresponding in all respects with the judgment in Hennepin, except that the plaintiff's name was therein given as " Samuel" instead of " Sumner."

On this account it was objected to by defendant as incompetent to prove that such judgment ·had been docketed in Carver county. The objection was properly overruled. From the correspondence in all other particulars the court would be warranted in treating it as a mere clerical error till defendant showed that it was not.

Executions were issued and returned unsatisfied on these judgments. The defendant insists that they were void, because not styled as required by the *Constitution, art.* 6, *sec.* 14.

The style thereof is as follows :

"STATE OF MINNESOTA, ⎱ DISTRICT COURT, FOURTH JUDICIAL
COUNTY OF HENNEPIN, ⎰          DISTRICT.
*To the Sheriff of the County, &c., &c.*"

The Constitution provides that the style of all process shall be " The State of Minnesota." If this is a case of want of the style thus prescribed, as to which we give no opinion, the objection is disposed of by the case of *Hanna vs. Russell,* 12 *Minn.* 80, where the same objection was taken to the summons therein set out.

" Admitting," say the court, " that a summons is process within the meaning of the Constitution, the want of the style

Thompson v. Bickford.

prescribed would not make it absolutely void. It would be error, of which a defendant might take advantage within the time and in the manner designated by law."

If process which lacks the prescribed style is voidable, not void, it necessarily follows not only that it cannot be collaterally attacked, but that it is good until set aside by the court which issued it.

The defendant suggests that the court in *Hanna vs. Russell* was speaking of mesne process. But there is no more reason for holding final process void, on this ground, than mesne process. Final process, like any other, is amendable in matters of form. Thus, an execution can be amended after a sale has been made under it of lands, the usual words of authority to the sheriff having been omitted. *Bordeaux vs. the Treasurers,* 3 *McCord,* 142; *Toomer vs. Purkey,* 1 *Const. Rep.* 323

In *Ripley vs. Warren,* 2 *Pick.* 592, it is said that "nothing can be more precisely matter of form than the *teste* of a writ, although by some unaccountable means it was thought important enough to be provided for in the constitution of the state." We are unable to see why the *style* of process is not quite as precisely matter of form as the *teste,* and think the entire remark above quoted is applicable to the provision before us. It is impossible to hold process void by reason of defects which are susceptible of amendment. We feel no disposition, therefore, to confine the principles of *Hanna vs. Russell* to mesne process.

We have thus considered the defendant's objections to the findings and order of the court, and find them to be untenable.

To arrive at this conclusion it was necessary, it is true, to indicate the error of so much of the order appealed from as allowed Bickford his demands against Lewis.

But since the plaintiff did not, as he might, appeal there-

from; but, on the contrary, expresses himself as satisfied therewith, we are not obliged to reverse it in that particular for his benefit.

Order appealed from affirmed.