L. D. STOCKING *vs.* ST. PAUL TRUST COMPANY, Executor, and another.

November 16, 1888.

**Secondary Evidence—Conditions of Admission.**—Secondary evidence of the contents of an instrument alleged to have been lost or destroyed is improperly received when the testimony wholly fails to show that the instrument once existed, and it must further be shown that the production of the primary evidence is out of the party's power.

**Same—Tax Certificates — Presumption.**—It will not be presumed that certificates made by the county auditor, where property was bid in by the state at a tax sale held in the year 1874, remained in the office of the auditor, subsequent to an assignment by the state to an individual of all its right, title, and interest in the property described in and conveyed by said certificates.

Appeal by plaintiff from an order of the district court for St. Louis county, *Stearns, J.,* presiding, refusing a new trial.

*Draper & Davis,* for appellant.

*White, Shannon & Reynolds,* for respondents.

COLLINS, J.  Action to determine an adverse claim to several lots in the city of Duluth, originally brought against Thomas Bower, who died pending the litigation, and whose legal representatives have been substituted as defendants.  The deceased claimed title to the property through tax certificates issued to the state by the county auditor, and subsequent assignments of the right and interest of the state to him.  The tax sale was in September, 1874, under a judgment rendered August 24th of that year, in proceedings to enforce the payment of taxes for the year 1873.  The plaintiff's title is derived from the general government, through several mesne conveyances.  Upon trial the defendants asserted that the certificates of sale, which must be made by the auditor as provided by section 124, chapter 1, Laws 1874, were duly made, but had been lost or destroyed; and, against the plaintiff's objections, parol evidence of their contents was received in evidence.  The assignments of error made by plaintiff (appellant) are, substantially, that the testimony failed to show that the certificates were made; that no proper foundation was laid for

secondary evidence of their contents; and that neither the existence nor the contents of such certificates can be established by parol.

1. We think the making of the certificates was not established. The then auditor testified that all of the certificates were properly made and many recorded; the balance, some 10,000 in number, he left piled up in the office at the expiration of his official term. All were signed by the auditor, but few were prepared by him; the greater number by his deputy, who was not called upon to testify. As the instruments were made, the maker (the auditor or his deputy, as the case might be) "checked off" against the proper description, as it appeared in a book furnished the auditor, from which he conducted the sale, called "Record of the Auditor's Office; Copy of Judgment of Clerk of Court." This checking was not an official act; it was for convenience only, to indicate, probably, that the blank form of certificate had been filled out. The witness could not say who drew the certificates in question, nor could he tell who made the "check" marks opposite the descriptions of the tracts involved. He further states that he knows that a certificate was made for every tract forfeited to the state; but this positive assertion must be considered by the light of the surrounding circumstances, and these plainly indicate that whether certificates were in fact executed for the tracts of land in controversy depends largely upon the manner in which the deputy auditor performed his duties; it is almost wholly contingent upon the accuracy with which he "checked off" the many descriptions, as he went down through the book from day to day, for nearly one year. The auditor, when testifying, relied much upon these check-marks, and, had he made them all himself, after personal preparation of the certificates, it is quite probable that evidence to that effect would have warranted the conclusion that they were all duly executed, as now claimed. We are not now prepared to assume— with two persons (one of whom is not sworn) separately and for a long period of time engaged in performing this work—that it was perfectly done; that no mistakes occurred in filling out the blanks, in "checking off" over 10,000 descriptions, and properly executing the same number of certificates. As the testimony introduced to show that the certificates were actually made was insufficient, sec-

ondary evidence of their contents was inadmissible. *Groff* v. *Ramsey*, 19 Minn. 24, (44.)

2. Allusion to the remaining alleged errors would be unnecessary, were it not that upon another trial the testimony upon the foregoing point might be sufficient. We therefore deem it advisable to discuss the claim that the evidence fails to show that the certificates could not be found, and had been lost. The law does not designate a depositary for such certificates as may be issued to the state, nor does it provide that they shall be recorded. In this instance, if issued at all, they were undoubtedly in the auditor's office when the witness, the former auditor, left it. This, we must presume, in the absence of evidence that he remained in office for more than one term of two years, was several years before the assignments to Bower were made. But upon what ground can it be assumed that the certificates remained in the possession of the auditor after the assignments were executed and delivered? They were unrecorded muniments of Bower's title, in the possession, if in existence, of the officer who made them, who was not retaining them by virtue of any express statute, but simply because the law failed to designate a custodian. The most natural thing to be anticipated is that the purchaser from the state in such cases will possess himself of the certificates upon which rests his title. He will, of course, know that they have not been recorded, the law making no provision therefor, and will ordinarily secure them for such purpose. For these reasons the search should have been made among the papers in Mr. Bower's possession when he died. The nature of the case would naturally suggest this in addition to a thorough examination among the files of the auditor's office, and the defendants had not exhausted in a reasonable degree all the sources of information and means of discovery accessible to them when they were permitted to show by parol and by blank form (said to have been like those used in making the certificates alleged to have been lost) the contents thereof.

Order reversed.