### MARY D. WILLIAMS AND HUSBAND,

### *vs.*

### FRANK McGRADE, et al.

Where a sheriff, by virtue of an execution in his hands, seizes goods as the property of the defendant in the execution, in an action against him by a third person who claims the goods, he must prove the execution, and a judgment upon which it is based.

Under our statute, a transcript of the judgment as entered in the judgment book is evidence of a domestic judgment of a Superior Court.

The omission of the clerk to make and file a judgment roll does not render the subsequent proceedings absolutely void.

The docketing of the judgment may be proved by a transcript of the judgment docket; and upon such proof the presumption, *prima facie*, at least, will be that the docketing is regular, and the roll duly filed.

Under *Ch.* 61, *Sec.* 106, *Comp. Stat.*, a wife during coverture holds the profits, and natural increase of her personal property, as her separate estate, both as against her husband and his creditors.

Mary D. Williams and Husband v. Frank McGrade, et al.

When a case settled does not purport to contain all the evidence given in the Court below, an objection that there is a want of evidence to sustain the verdict cannot prevail.

In actions of tort, where the wrong is joint and several, and the answer of one of the defendants is such as shows the plaintiff could have no cause of action against any of them, if the finding be against the plaintiff, it shall operate to the benefit of all the defendants.

This action was commenced in the District Court for Carver County, and is brought to this Court by appeal, taken by defendants, from an order of said District Court denying a motion for a new trial. A sufficient statement of the case will be found in the opinion of the Court.

L. M. & J. H. BROWN for Appellants.

CHATFIELD & IRWIN for Respondents.

*By the Court*—McMILLAN, J.—The complaint alleges the wrongful taking of certain personal property of the plaintiff, Mary D. Williams, by the defendants, &c.

The defendants all appear by the same attorneys, who sign one answer as " Attorneys for Defendants," in which all the defendants, except McGrade and Cressey, deny each and every allegation in the complaint.

The defendant, McGrade, alleges a prior action pending, &c., and the defendant, Cressey, alleges that he took the property in question as the property of Henry H. Williams, as Deputy Sheriff, by virtue of certain executions against said Williams, issued upon three certain judgments specified in the answer, &c.

The reply puts in issue the new matters pleaded by McGrade and Cressey respectively. The trial resulted in a verdict for the defendant, McGrade, and for the plaintiffs as against the other defendants. On the trial of the cause the

defendants' counsel offered in evidence three transcripts of judgments against the plaintiff, Henry H. Williams, and also three transcripts of the judgment docket, showing the docketing of the judgments. To the admission of each of these transcripts the counsel for the plaintiff objected, on the ground that the same were not competent evidence to prove the judgments in the absence of the judgment rolls. The Court overruled the objection, and admitted the transcripts, "not as sufficient evidence of said judgments, in the absence of the judgment rolls, but as parts of the record of said judgments."

The defendants then offered in evidence each of the three executions with the endorsements thereon, issued upon said judgments. These were objected to, for the reason that no sufficient proof of judgments had been introduced to authorize the issuance of either execution; which objection was sustained by the Court, and the defendant excepted.

As the defendant, Cressey, justified, as Deputy Sheriff, the taking of the goods in question, as the property of Henry H. Williams, under executions against him; in this action, brought by a third party, who claims the goods, if a fraudulent assignment or colorable sale of the property from the judgment debtor to the plaintiff is relied on, it is incumbent on him to prove a writ and judgment upon which it is based. 1 *Stark. Ev.*, 329; 2 *Stark. Ev.*, *pt.* 2, *p.* 1030, and authorities cited. *Martin vs. Padgett*, 5 *Burr*, 2631; 2 *Greenl. Ev.*, *Sec.* 629.

But it is only proof of the judgment itself, as a fact, that is required, and not in any degree the matters upon which it is founded; for this purpose the judgment is always admissible. 1 *Stark. Ev.*, *pp.* 252–4; 1 *Greenl. Ev.*, *Secs.* 527, 538–9. A judgment is the sentence of the law pronounced by the Court upon the matter contained in the record, (3 *Bl.* 395), and this is all that is essential to its existence; its incidents may be

enlarged or qualified by statute without affecting its essence.

Our statute provides in relation to judgments—" The judgment shall be entered in the judgment book, and specify clearly the relief granted, or other determination of the action." *Genl. Stat. Chap.* 66, *Sec.* 250, *p.* 485; 10 *Minn.* 303. Thus, it appears, a separate book is required, in which judgments are to be entered; when thus entered the judgment is complete; it may not have all the incidents which under other circumstances might attach to it under our statute, but it determines the rights of the parties in the action; (*Gilmartin vs. Smith*, 4 *Sandf. S. C.*, *Sec.* 686;) until docketed it is not a lien on the real estate of the judgment debtor; (*Genl. Stat. Ch.* 66, *Sec.* 254); but this is not essential to the existence of the judgment (*Ib., Sec.* 251.) We think it is evident, that whatever may be the effect of filing the judgment roll, it was not intended that it should affect the existence of the judgment, for one of the papers required by the statute to constitute the judgment roll is " a copy of the judgment" (*Ib., Sec.* 252, *sub-div. first.*) If a copy of the judgment constitutes a part of the judgment roll, the original must exist.

To prove, as a fact, a domestic judgment of a Superior Court, it is not necessary in the first instance to establish any of the preliminary proceedings upon which the judgment depends, the presumption *prima facie* being that the proceedings are regular. *Rathbone vs. Rathbone*, 10 *Pick.* 1. *Bloom vs. Burdick*, 1 *Hill.*, 139. *Hatcher vs. Rochleau*, 18 *N. Y.* 86. 2 *Stark. Ev., pt.* 2, *p.* 935–6.

Under the English practice, when judgment was signed, it appears to have been entered in a judgment book; but this book seems to have been a mere memorandum, or minute book, containing a memorandum of the judgment, not the judgment itself, and was not evidence of the judgment. 1 *Tidd's Pr.* (3 *Am. from* 9 *Lon. Ed.*) 556; 2 *Ib.* 943. *God-*

Mary D. Williams and Husband v. Frank McGrade, et al.

*frey vs. Jay and another*, 1 *Moore & P.* 236. Although, under that practice, the party may take out execution immediately after the judgment is signed by the proper officer, yet it is not a perfect and permanent record till the roll is brought into Court and filed. 2 *Tidd's Pr.* 943.

The filing of the roll, therefore, was essential to the record of the judgment. And in New York it was held by the early decisions, that an execution could not issue until the judgment roll was signed, and filed with the clerk; (*Barrie vs. Dana*, 20 *Johns*, 308); and subsequently it was enacted by statute—that "no judgment shall be deemed valid so as to authorize any proceedings thereon until the record thereof shall have been signed and filed." 2 *Rev. Stat. 3d Ed., p.* 456, *Sec.* 14; 2 *N. Y. Stat. at Large, p.* 373, *Sec.* 11. Under these provisions it would seem that the judgment roll was the only authentic record of the judgment. *Townsend vs. Wesson*, 4 *Duer*, 350. *Walters et al, vs. Sykes & Harman*, 22 *Wend.* 568. But in our State we have no such provision. By our statute the entry of the judgment in the judgment book precedes the making and filing of the roll, and a copy of the judgment, as recorded in the judgment book, is to constitute a portion of the roll. The judgment, however, is complete when entered in the judgment book. *Lontilhon vs. The City of N. Y.*, 3 *Sandf.* 722.

The entry of the judgment in the judgment book would seem to be the formal and permanent entry of the judgment upon the record, and holds the same relation to the proceedings under our laws, that the entry of judgment in the judgment roll held under the English and N. Y. practice. It is the original record, and therefore evidence of the judgment. If so, a transcript of the record is made competent evidence by statute. *Genl. Stat. Ch.* 73, *Sec.* 66, *p.* 528.

How far the omission to file a judgment roll would in any

Mary D. Williams and Husband v. Frank McGrade, et al.

case affect the *regularity* of the docketing of the judgment, and the issuing of an execution, we need not consider.

Under our statute the making and filing the judgment roll is a mere clerical duty imposed on the clerk of the Court, to be performed immediately after entering the judgment, (*Genl. Stat. Ch.* 66, *Sec.* 252), for which neither the party nor his attorney is responsible; (*Heineman vs. Waterbery*, 5 *Bos.* 690), and it seems to us the omission of this duty cannot render the subsequent proceedings absolutely void. *Renouil vs. Harris*, 2 *Sandf.* 641. *Cook vs. Dickerson*, 686. See also *Sears vs. Burnam*, 17 *N. Y.* 446. As, therefore, it appears that the judgment was docketed, the presumption, *prima facie* at least, is that the docketing is regular, and the roll duly filed. *Broom's Leg., Max.* 266. The transcripts, therefore, we think, were competent and sufficient *prima facie* evidence of the judgment, and the docketing of the same.

The effect of the judgment roll as evidence is not involved nor determined here, except that it is not exclusive evidence of a judgment.

The Court charged the jury, " that if they found that Mary D. Williams owned the flock of fifty sheep, and that they were purchased with her money, then the profits, increase and income thereof belonged to her. That the fact, (if the jury should so find), that the increase of the flock came into the possession of her husband, did not give him title thereto."

The defendants claim that it was error to charge that the profits and increase of personal property of a married woman, in the possession of her husband, was the separate property of the wife. At common law the personal property of the wife, in her possession at the time of marriage in her own right, vested immediately and absolutely in the husband 2 *Kent*, 43. As to choses in action belonging to her, he could recover them; and when recovered and reduced to his pos-

session as his own, and not till then, the property vested in him. 2 *Kent*, 135. This has been changed by statute in our State. The statute provides as follows : "Any real or personal estate which may have been acquired by any female before her marriage, either by her own personal industry or by inheritance, gift, grant, or devise, or to which she may at any time after her marriage be entitled by inheritance, gift, grant, or devise, and the rents, profits, and income of any such real estate, shall be and continue the real and personal estate of such female after marriage, to the same extent as before marriage. * * * *Comp. Stat. Ch.* 61, *Sec.* 106, *p.* 571.

As to real and personal property acquired by personal industry, or otherwise, before marriage, and the rents, profits and income of real estate, during coverture, there can be no doubt that the statute secures these to the wife, as her separate property ; the question here is, whether it vests in her the *profits*, and *increase during coverture*, of her personal property ; these are not expressly mentioned in the act. Are they embraced in it by implication ? The right to the profits, and natural increase of tangible personal property, is incident to, and results from its ownership. The property mentioned in the act is vested in the wife during marriage, to the same extent as before marriage, that is, the wife has the same interest or estate in it after, and during marriage, as before. Before her marriage she could have the absolute title to such property, and as incident thereto, to the profit and increase thereof. If, being the owner of tangible personal property in her possession, the wife is not entitled to the profits and increase thereof, as her separate property, then it is not hers to the same extent after marriage as before. The absolute ownership of the personal property belonging to a *feme sole*, being secured to her after coverture, by the act

under consideration, it follows that the incidents of this ownership are also secured to her, of which one is, as we have seen, the right to the natural increase of the property; it was therefore unnecessary to mention it expressly in the act. We are therefore of opinion, that, under the statute referred to, the wife, during coverture, holds the profits and natural increase of her personal property as her separate estate, both as against her husband and his creditors. If the husband, or any other person, was in possession of these sheep under a contract, the question, as to the ownership of the natural increase, would rest on entirely different principles; but as the question does not seem to have been raised in the evidence, or in the law of the case, we need not consider it farther. We see no error in the charge of the Court.

The objection that "the case shows no ground or foundation whatever for a verdict against any one of the defendants except Cressey," was not raised in the Court below; and the case, it would seem, was not made in anticipation of any such objection. The case does not purport to contain all the evidence given on the trial in the Court below, and so far as it rests upon a want of evidence to sustain the verdict, cannot prevail here.

The only error in the record is the exclusion of the judgments and executions offered in evidence on the trial.

It is claimed by the plaintiff that Cressey is the only defendant who has pleaded the judgments and executions, and justified the taking under them, and therefore he only can review the rulings of the Court upon the questions arising in the case. The rule of law is, that "in actions of tort, as trespass, &c., where the wrong is joint and several, and the plea of one of the defendants is such as shows the plaintiff could have no cause of action against any of them, if the plea be found against the plaintiff it shall operate to the

benefit of all the defendants, and the plaintiff cannot have judgment or damages against those who let judgment go by default." 2 *Tidd's Pr.* 895, 6.

The action at bar is an action of replevin. The acts constituting the wrongful taking alleged in the complaint, are levies upon the property by Cressey, as deputy sheriff, under and by virtue of the executions referred to.

This appears from the answer in the case, which alleges that the transactions stated by Cressey as a justification, are the identical transactions complained of in the complaint of the plaintiffs in the action. The other defendants, then, against whom a verdict has passed, must have participated, in some way, in the act of Cressey. If, therefore, the justification of Cressey is sustained, it is evident that the taking was right, and the plaintiff could have no right of action against the others. For this reason, although from the form of the answer which is somewhat peculiar, we might regard the answer of Cressey as his several answer, yet as it appears from it, that if sustained, the plaintiff has no cause of action against the other defendants, it must operate to their benefit, and the plaintiff cannot have judgment against them. The order denying a new trial is reversed, and a new trial granted.