JOHN C. HUNTER, Assignee, *vs.* CLEVELAND CO-OPERATIVE STOVE COMPANY.

## February 25, 1884.

**Adverse Claims—Action by Assignee for Creditors—Judgment entered after, but as of date prior to, the Assignment.**—The plaintiff, as statutory assignee of certain land for the benefit of creditors, brings this action to determine an adverse claim to the same made by defendant. The adverse claim, as set up in defendant's answer, is based upon the alleged lien of a judgment confessed by plaintiff's assignor, and appearing upon the records of the district court to have been indorsed upon the "statement" for confession, and docketed before the assignment to plaintiff, while *in fact*, and as the reply alleges, the judgment was not so indorsed nor entered in the judgment-book until more than six months after the making and filing of the assignment. *Held*, that in this action the false record may properly be attacked, and plaintiff's title as assignee adjudged paramount to the lien appearing to be thereby created.

Appeal by defendant from a judgment of the district court for Clay county.

Plaintiff, in his amended complaint, alleges that he "is the owner in fee and in the possession of the following described real estate, situate in the county of Clay," etc., (describing it;) that the defendant is an Ohio corporation, and "claims an estate or interest in said described real property adverse to the title of said plaintiff." Judgment is demanded that "the defendant disclose the estate or interest in the above-described real estate claimed by it, and that the same, as against the title of this plaintiff, be declared unlawful and void," and for costs.

The defendant, in its answer, denies plaintiff's ownership and possession, and alleges the recovery and docketing of a judgment for $1,065, by defendant, against one Wilhelmina S. Douglas in the district court for Clay county, on March 4, 1879, and the recovery and docketing, in the same court on the same day, of two other judgments against Douglas, one for $85.34, in favor of Lyman Brothers, and the other for $272.75, in favor of one Kimback, at which time Douglas was owner in fee of the property in question.

The answer further alleges that after the rendition and docketing of these judgments, Douglas made a general assignment of all her property to F. A. Elder and W. H. S. Brady, for the benefit of creditors; that Elder and Brady resigned, and the judge of the district court for Clay county appointed plaintiff as assignee. That afterwards, and on November 12, 1879, plaintiff, as such assignee, moved the same court for an order vacating the judgments, and on January 7, 1880, obtained an order vacating them, which order was, however, reversed by the supreme court, on September 13, 1880. (See *Cleveland, etc., Stove Co.* v. *Douglas,* 27 Minn. 177.) That on February 23, 1881, an execution issued on each of the judgments, by virtue of which the sheriff duly levied on the land, and on April 30, 1881, sold it to defendant for $2,150, and executed and delivered to it the statutory certificate of sale, which was duly recorded prior to the bringing of this action, (which was begun June 23, 1881.)

The reply denies that the judgments pleaded in the answer were rendered in any actions pending, or were rendered or docketed on the

date stated in the answer, and further alleges that on March 3, 1879, Douglas, being a resident of Clay county, and owner in fee of the real estate in question, made the general assignment pleaded in the answer, which was filed in the office of the clerk of the district court for Clay county on March 4, 1879, at 7.30 o'clock A. M., at which time there were no judgments of record or docketed against Douglas; that in September, 1879, the assignees resigned and were by the judge of the court removed, and plaintiff appointed in their stead, the judge, in the order of appointment, transferring to plaintiff all the property of Douglas, including the land in question.

The reply further alleges that on March 3, 1879, the defendant, Lyman Brothers, and Kimback, each procured Douglas to make in his favor a statement for confession of judgment, which statements were delivered to the clerk of the court, at his residence, on March 4, 1879, at 7 A. M., 7.10 A. M., and 7.20 A. M., respectively. That at about 9.30 A. M. of the same day, and no earlier, and before the indorsement of any judgment on any of the statements, or entry of any judgment in the judgment-book, or the making or filing of any judgment-roll, in any of the cases, the clerk made entries of pretended judgments in the docket of the court, falsely showing, in substance, that judgments had been entered on March 3d and docketed on March 4th, against Douglas, in favor of defendant, for $1,065, in favor of Lyman Brothers, for $79.91, and in favor of Kimback, for $272.75. That there was not, prior to October 16, 1879, any paper on file or of record in any of the cases, except the statement for confession of judgment and the false docket entry, nor had any judgment been rendered or entered, nor any judgment-roll filed, in any of them. That on October 16, 1879, the parties in whose favor the confessions were made, for the purpose of defrauding plaintiff and the general creditors of Douglas, caused the clerk of the court to indorse on each of the statements, and to enter in the judgment-book, a pretended judgment in each case for the amount confessed, and to antedate such pretended judgments as of March 4, 1879, and to indorse on each statement such pretended judgment so antedated, and to make up and file in each case a judgment-roll as of the date March 4, 1879—all which was done by the clerk; and that the several executions on which the

land was sold to defendant were issued at the instance of the judgment creditors, when they all knew the facts in regard to the pretended judgments and void docket entries, and for the purpose of defrauding plaintiff and the general creditors of Douglas.

At the trial before *Stearns*, J., the plaintiffs in each of the confessed judgments moved that each of the docket entries, executions, and all subsequent proceedings thereunder, be amended by substituting March 4th, in place of March 3d, wherever the latter date occurs. The motion was denied.

In regard to these judgments, the court found, in substance, that the statements for confession of judgment were made March 3, 1879; that on March 4, 1879, at 7 o'clock, 7.10 and 7.20 A. M., respectively, the statements were delivered to the clerk of the court by the attorneys for the parties in whose favor they were made, with directions to file them and enter judgments thereon. That at 8 o'clock A. M. of the same day the clerk made the docket entries as stated in the reply, the general assignment of Douglas having been filed at 7.30 A. M. That in October, 1879, and not before, the clerk indorsed on the statements and entered in the judgment-book the judgments authorized by the confessions, which judgments bear date March 4, 1879.

The court also found that the motion to vacate the judgments was made by plaintiff, and with the result as stated in the answer, and was made on the ground "that the confessions were insufficient and did not warrant the entry of any judgment." It was also found that "the charges of fraud and collusion by and between the said clerk and attorneys of the defendant, charged in the plaintiff's reply, are not true."

As a conclusion of law the court held the plaintiff entitled to judgment, adjudging him to be owner of the premises in question, free from any estate, interest or lien of defendant, and for costs.

*Briggs & Elders,* for appellant.

The records of the judgments show their entry and docketing prior to the filing of the voluntary assignment, and these records cannot be collaterally impeached by the parties, or by their privies in estate. *Ferguson* v. *Kumler,* 25 Minn. 183; *Dayton* v. *Mintzer,* 22 Minn. 393.

An assignee for creditors is not a *bona fide* purchaser. He is in

privity with his assignor, has only the rights the latter had at the time of the assignment, and stands in his shoes, representing him alone, and with no title or right superior to his.  *Gere* v. *Murray*, 6 Minn. 213, (305;) *Bennett* v. *Ellison*, 23 Minn. 242; *Ruble* v. *McDonald*, 18 Iowa, 493; *Roberts* v. *Corbin*, 26 Iowa, 315; *Warner* v. *Jameson*, 52 Iowa, 70; *Estabrook* v. *Messersmith*, 18 Wis. 545; *Hawks* v. *Pritzlaff*, 51 Wis. 160; *Wakeman* v. *Barrows*, 41 Mich. 363; *Honsel* v. *Cremer*, 13 Neb. 298; *Vandyke* v. *Christ*, 7 Watts & S. 373; *Brownell* v. *Curtis*, 10 Paige, 210; *In the Matter of Howe*, 1 Paige, 124; *S. C.*, 19 Am. Dec. 395, and note, p. 399.   And see *Clark* v. *Stanton*, 24 Minn. 232  *Kingman* v. *Barton*, Id. 295; *Flower* v. *Cornish*, 25 Minn. 473.   This last case held that prior to the act of 1877, (Gen. St. 1878, c. 41, § 27,) the assignee could not attack even fraudulent conveyances of his assignor.   That act merely provides that he shall represent the creditors as against fraudulent transfers and conveyances only, and have the rights they would have "to avoid such fraudulent conveyances and transfers."

The cases cited showing that Douglas could not impeach these confessed judgments in a collateral action, and plaintiff being in privity with Douglas, and all the judgments appearing by the record to have been entered and docketed prior to the filing of the assignment, the validity of the judgments must be tried by the records alone.   Cases *supra*, and *Verplanck* v. *Van Buren*, 76 N. Y. 247; *Re Fulton's Estate*, 52 Pa. St. 204; Freeman on Judgments, § 162.

The plaintiff having moved to vacate these judgments, and the motion having been heard and determined on the merits, he is estopped from further attempts to impeach them.   It does not appear that he was ignorant, when he made his motion, of any of the facts alleged in his reply.

The judgment creditors, having delivered the confessions to the clerk with directions to enter judgment, should not be prejudiced by his omission to make the proper entries at the time—an omission which is a mere irregularity, of which neither Douglas nor the plaintiff can complain.

*Ensign & Cash* and *Burnham & Gould*, for respondent.

BERRY, J. This is an action for the determination of an adverse claim to certain lands. The plaintiff's title is that of statutory assignee of Wilhelmina S. Douglas, under an assignment made by her for the benefit of creditors, on March 3, 1879, (when she owned the property in fee,) and filed in the proper clerk's office on March 4th, following. Defendant's adverse claim is based upon the alleged lien of a judgment confessed by said Douglas in its favor. The "statement" for confession was made and filed with the clerk of the court on March 4, 1879, and on that day the clerk made entries in his docket showing that the judgment bore date March 3, and was docketed March 4, 1879. The trial court finds that the judgment bears date March 4, 1879, but that it was *in fact* indorsed on the "statement" and entered in the judgment-book, in October, 1879, and not before. Until the indorsement or entry is made there is no judgment, (*Wells* v. *Giescke*, 27 Minn. 478,) and until there is a judgment there can be no valid docketing. Hence, (if the finding of the court was competent,) as a matter of fact, at the time when the assignment was perfected, the defendant's judgment was not in existence, and of course no lien upon the lands; and as plaintiff as assignee took whatever the assignor had at the time of the assignment, it follows that he took the fee free from any such lien.

But it is said that the finding was not competent, because the judgment and docket entries are records of the district court, and as such import absolute verity, and cannot be collaterally contradicted. *Ferguson* v. *Kumler*, 25 Minn. 183, is cited in support of this proposition. That was an action between the *immediate parties* to a judgment sought to be attacked; as to them, the record was held to be conclusive as against a collateral attack. *Dayton* v. *Mintzer*, 22 Minn. 393, (also cited,) rests upon analogous grounds.

In the case at bar the plaintiff is a stranger to the alleged judgment,—just as much so as would be one of the creditors whom he represents,—and hence he is not estopped or in any way bound by it. 1 Greenl. Ev. § 532. Under the statute, as assignee, he takes and holds the assigned property "in trust for the benefit of creditors" of the assignor. Hence it is his plain duty to protect and defend it, and, so far as lies in his power, to make it available to the payment

of the creditors' claims. If, after he has taken the lands under the assignment, the records of a court are so manipulated as to show a judgment lien upon the assigned property at the time of the assignment, and such records are false, there being no such judgment lien at that time, it is the assignee's duty to protect the property by removing the cloud which the false records raise. He cannot move in the action or *quasi* action in which the alleged judgment lien was obtained, for he is not a party to it; neither has he succeeded to the rights or liabilities of any party to it. As respects the judgment, there is no privity between him and either party to it. *Mann* v. *Flower*, 26 Minn. 479; and see *Bennett* v. *Whitcomb*, 25 Minn. 148; *Vose* v. *Morton*, 4 Cush. 27; Freeman on Judgments, § 162. Nevertheless, there must be some way in which he can have it adjudicated that his title to the land is paramount to the lien of the defendant's judgment, notwithstanding the appearance of the record to the contrary, for otherwise his case would be the inadmissible one of a clear legal right without a remedy. He must therefore be able to attack the false record in some way. Possibly, if it were *necessary* for him to have the record amended so as to accord with the facts, he might, upon an order to show cause, or by some other method, (though not exactly by a motion in the action itself,) apply to the court for the correction of the record. *Balch* v. *Shaw*, 7 Cush. 282. But it is not necessary for his purposes that the record should be amended. If the parties to the judgment are satisfied with it as it stands, he may well decline to interfere with it. His concern is that his title be adjudged paramount to the lien apparently created by the false record.

We see no reason why this may not be done in the present action, without any correction of the record. It is an action to determine defendant's adverse claim. The answer sets up the judgment, and the reply the facts which go to show that the record is false. An issue as to the validity of the apparent lien is thus distinctly raised in the pleadings. The facts set up in the answer, and found by the court, also show that, as respects the plaintiff, the record is not only false, but in law fraudulently false, though, as the court finds, there may have been no moral fraud. That fraud vitiates everything is a rule without exception, and which applies to a judgment as well as to

an ordinary contract. Steph. Ev. art. 46. Why may it not also apply to the false and fraudulent *record* of a judgment? and why, in an action like the present, may not a party injured by such record have it adjudged to be false and fraudulent as respects him, and thereby secure just and appropriate relief, without disturbing a record with which he has no further concern, save as it clouds his title? We see no good reason to the contrary. It is true that the record of a judgment is stated by high authority to be conclusive evidence of the fact of the rendition of the judgment, and of all the legal consequences resulting from that fact, whoever may be the parties to the suit in which it is offered in evidence. 1 Greenl. Ev. § 538. But, in our opinion, this statement is too broad when sought to be applied to an attack upon the record by a stranger, upon the ground that it is as to him false and fraudulent. Such an attack may, in a case like this at bar, be made in a collateral action. See *McIndoe* v. *Hazelton,* 19 Wis. 567, and *Edson* v. *Cumings,* 17 N. W. Rep. 693, and cases cited.

This disposes of the substance of the defendant's appeal.

Judgment affirmed.