## LOCKE v. HUBBARD.

1. Under Comp. Laws, Sec. 5102, providing that a judgment "shall be entered in the judgment book," a judgment so entered is the original judgment, and a form of judgment signed by the judge is only an order for judgment, and not the judgment of the court.

2. Comp. Laws, Sec. 5102, providing that the judgment must be entered in the judgment book, does not, in effect, give authority to the clerk to enter the judgment, as the act of the clerk in so entering the judgment is merely the clerical act of writing the judgment under the direction of the court.

3. Where oral evidence of the clerk of the court is admitted without objection to contradict the recitals in an execution, it cannot be disregarded on appeal.

4. Under Comp. Laws, Section 5110, providing for the issuance of execution within five years after entry of judgment, no execution can issue until after such entry.

5. A payment by a third person to a bank on its delivery to him of a note secured by a mortgage, on which payments have been made, but not in-

dorsed, which fact was known to all the parties thereto, is an assignment by the bank of the note, and continues the lien in behalf of the assignee for the amount paid by him.

(Opinion filed Dec. 11, 1896.)

Appeal from Minnehaha county court. Hon. E. PARLIMAN, Judge.

Action in conversion. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

The facts are stated in the opinion.

*Davis, Lyon & Gates*, for appellant.

The entry of the judgment is so far ministerial that in those states where the statute designates a time within which it must be entered, it does not effect the validity of the judgment, if the statute is not complied with. Bank v. Wolff, 21 Pac. 551; Marshall v. Taylor, 32 Id. 515; Brown v. Porter, 34 Id. 1105; Freem. Judgm. § 40; Black, Judgm. § 106; Telegraph Co. v. Patterson, 1 Nev. 124; Re Cook's Est., 19 Pac. 431; S. C, 1 L. R. A. 567; Fish v. Emerson, 44 N. Y. 376; Re Newman's Est., 75 Cal. 213; 16 Pac. 887; 12 Am. & Eng. Encyc. of Law 71; Gray v. Palmer, 28 Cal. 416. See, also, Mouser v. Palmer, 2 S. D. 466; 50 N. W. 967; Hegaard v. Dak. L. & T. Co., 3 S. D. 569, 54 N. W. 656. The judgment having been rendered, the enforcement of it did not depend upon its entry in the judgment book. 1 Freem., Judgm., § 38; 1 Black, Judgm., § 106; Bank v. Raynor, 61 Cal. 145; Graham v. Lynn, 39 Am. Dec. 493; Lowenstine v. Caruth, 28 S. W. 421; Fontain v. Hudson, 93 Mo. 62. The execution recited that the judgment was entered and docketed. This recital in the record could not be rebutted by parol evidence. But even though the execution actually issued at a later hour than the judgment was recorded, such fact would be a mere irregularity in procedure and would not affect the validity of the execution. White v. Crow, 110 U. S. 183, 28 L. Ed. 113; Re Newman's Est., 16 Pac. 887; Mitchell v. Aten, 37 Kan. 33, 14 Pac. 497; Lillinger v. Tarbell, 16 Ia. 441.

*Joe Kirby*, for respondent.

As to what is and what is not a judgment the court is cited to Gould v. Elevator Co., 3 N. D. 96, 54 N. W. 316; Weber v. Mayer (N. D.) 28 L. R. A. 621.

CORSON, P. J. This was an action to recover the value of a stock of drugs, etc., alleged to have been converted by the defendant and appellant. The appellant justified the seizure under and by virtue of a judgment and execution in the case of Noyes Bros. & Cutler against B. L. Havdahl. The plaintiff claimed the right to the possession of the stock of drugs under and by virtue of a chattel mortgage executed by said Havdahl to one N. J. Deisher, trustee, and by him transferred to the plaintiff, as was alleged by the plaintiff.

The important question in the case arises on the ruling of the court in excluding the judgment and execution in the action of Noyes Bros. & Cutler against Havdahl, under which the appellant, as sheriff of Minnehaha county, sought to justify his seizure of the property in controversy. H. B. Carleton, a witness on the part of the defendant, testified that he was the clerk of the circuit and county court in and for Minnehaha county, and on cross-examination he testified that "the judgment was entered on page 303 of the record book on the day it was filed, November 20th, some time during that day. It was not entered in the judgment book at the time the execution was issued." The defendant then offered the judgment roll and execution in evidence, to which the counsel for plaintiff objected, and the same were excluded, and defendant excepted. The grounds of the plaintiff's objection are not stated in the abstract, but both parties have argued the case in this court, upon the theory that the objection was made upon the ground that it appeared from the evidence of Carleton, given without objection, that no judgment had been entered in the judgment book at the time the execution issued, and that the judgment and execution were evidently excluded upon that ground by the trial court. The

copy of the judgment found in the judgment roll is in the usual form of a default judgment, and appears to have been made by the court, and signed by the circuit judge in his official capacity. As no judgment, however, was entered in the judgment book at the time the execution was issued, the respondent insists that the clerk had no authority to issue the execution, and it was therefore void.

It is contended by the learned counsel for the appellant that the judgment, when reduced to writing, and signed by the judge, was the final determination of the action, and execution issued thereon was a valid execution, though no judgment had been, in fact, entered in the judgment book, and that the court, therefore, erred in excluding the judgment roll and execution. The learned counsel for the respondent contends that the paper signed by the judge was, in legal effect, simply an order for judgment, and that there can be in this state no legal judgment until one is entered in the judgment book, which will authorize the issuance of an execution, the filing of a judgment roll, or the docketing of the judgment. This is an important question in this state, and has never yet been passed upon by the appellate court. A judgment is defined by Sec. 5024, Comp. Laws, as follows: "A judgment is the final determination of the rights of the parties in the action." It will be observed that what constitutes the evidence of such judgment, or when or how such determination of the rights of the parties shall become effectual as a judgment, is left unprovided for by that section. It defines a judgment in the language of most of the text-books upon this subject. Section 5095 provides that "judgment upon an issue of law or fact * * * may be entered by the clerk upon the order of the court or the judge thereof." Section 5101 provides that "the clerk shall keep, among the records of the court, a book, for the entry of the judgments, to be called the 'judgment book'" Section 5102 provides: "The judgment shall be entered in the judgment book, and shall specify clearly the relief granted or other determination of the

action." It will be noticed that no judgment is mentioned which is to be copied or entered in the judgment book, but that the judgment shall be entered by the clerk in the judgment book. Section 5103 provides, that, "immediately after entering the judgment," a judgment roll shall be made up, and what it shall contain. Section 5104 provides that, "on filing the judgment roll," the judgment shall be docketed, etc. And Section 5110 provides that "the party in whose favor judgment has heretofore been or shall hereafter be given * * * may, at any time within five years after the entry of judgment, proceed to enforce the same by execution." Section 5111 provides: "After the lapse of five years from the entry of judgment," application can be made to the court, etc. It will thus be seen that the judgment entered in the judgment book is the only judgment mentioned in the statute. What authority, therefore, has this court to hold any paper or record a judgment other than the one entered in the "judgment book?" The judgment there entered is the original judgment, and the only one the law contemplates.. Undoubtedly, the court, judge, or counsel may very properly prepare a form of judgment for the clerk to enter, but such paper, though signed by the judge or court, is no more the judgment of the court than the one prepared by counsel. It may be, and probably would be held, an order for judgment. If these views are correct, then it follows that the execution was issued before the entry of any judgment upon which it could be based, and before the clerk was authorized to issue it, as he is only authorized to issue the execution at any time within five years after the entry of the judgment, but not before such entry.

The counsel for the appellant have cited a large number of authorities, including both text writers and courts, in support of their contention that the judgment prepared and signed by the judge is the judgment of the court; but the statutory provisions on this subject are so various that these decisions throw but little light 'upon the question, under the peculiar

provisions of our statute.  The statutes of Minnesota upon the subject of judgments are very nearly, if not identically, the same as those in this state, and that court has uniformly held that there is no judgment in that state, other than the one entered in the "judgment book."  In Rockwood v. Davenport, 37 Minn. 533, 35 N. W. 377, that court, by GILFILLAN, C. J., says: "Gen. St. 1878, Chap. 66, Sec. 273 [Gen. St. 1894, Sec. 5421], reads:  'The judgment shall be entered in the judgment book, and specify clearly the relief granted, or other determination of the action.'  By Sec. 275 [Sec. 5423] the clerk is required, 'immediately after entering the judgment,' to attach and file, as the judgment roll, certain papers, among them a copy of the judgment.  Sec. 277 [Sec. 5425] provides for docketing the judgment 'on filing the judgment roll.'  These acts follow in regular sequence.  First, the entry of the judgment; second, the making up and filing the judgment roll; third, the docketing.  To support either a judgment roll or docketing, there must be a judgment entered.  As this court said in Williams v. McGrade, 13 Minn. 46 (Gil. 39):  'If a copy of the judgment roll, the original must exist.'  There can be no judgment capable of being docketed or enforced in any manner till it is entered in the judgment book.  Until that is done it does not matter that the party is entitled to judgment either by default of defendant, or upon a decision or direction of the court. It has frequently been decided that an order or direction for judgment by the court, or by a referee, is not a judgment so that an appeal can be taken from it.  That, to constitute a judgment, it must be entered in the judgment book, as the statute directs, has always been held by this court.  Brown v. Hathaway, 10 Minn. 303 (Gil. 238); Williams v. McCrade, 13 Minn. 46 (Gil. 39); Washburn v. Sharpe, 15 Minn. 63 (Gil. 43); Hodgins v. Heaney, 15 Minn. 185 (Gil. 142); Thompson v. Bickford, 19 Minn. 17 (Gil. 1); Hunter v. Stove Co., 31 Minn. 505, 18 N. W. 645."  The supreme court of North Dakota, construing the same provisions of the Code of Civil Procedure now

under consideration, in a very exhaustive opinion, takes the same view. Mr. Justice BARTHOLOMEW dissented, but upon other points decided by the majority of the court. *In re* Weber (N. D.) 59 N. W. 523. We find no authority for holding a different view upon statutes containing similar provisions, and hence upon the weight of authority, as well as upon our own view of these provisions, we hold that a judgement, within the meaning of our Code, is a judgment entered in the judgment book; and, until one is entered therein, there is no judgment upon which an execution can be legally issued by the clerk.

It is further contended that such a holding has the effect of giving authority to the clerk, and not the court, to enter the judgment. But this is not so, for the reason that, in contemplation of law the court enters the judgment in the judgment book, through its clerk, who merely performs the clerical act of writing the judgment in the judgment book, under the direction of the court.

It is further contended by appellant that the practice in this state has been to regard the judgment, signed by the court and filed, as the judgment in the case, and that a decision at this time will unsettle titles to property sold upon execution. While a court, in making its decision, cannot look to consequences beyond the case before it, we apprehend no such result as counsel suggest would follow, for the reason that evidence *aliunde* the record could not properly be admitted in a collateral proceeding, if objected to on the trial, and the presumption that the clerk had performed his duty would prevail, unless otherwise clearly shown by the record. In the execution issued in this case, the clerk recites that "whereas, on the 19th day of November, 1895, * * * plaintiffs recovered a judgment in the circuit court," etc.; "and whereas, the judgment roll * * * was filed in the office of the clerk * * * on the 20th day of November, 1895, and the said judgment was docketed * * * on the 20th day of November, 1895." As no judgment can be said to be recovered until it is properly en-

tered in the judgment book, and no judgment roll filed until such judgment is entered, the court would have been authorized to presume that the judgment was properly entered before execution was issued; and in a collateral proceeding the oral evidence of the clerk would be incompetent, if properly objected to, to contradict the recitals in the execution. But in the case at bar such evidence was admitted without objection, and hence this court cannot disregard it on this appeal. Upon the evidence as admitted, the court ruled correctly in excluding the execution, as there was no judgment authorizing its issue at the time it was issued. Comp. Laws, § 5110.

At the conclusion of all the evidence, the plaintiff requested the court to direct a verdict for the full amount appearing to be due upon the note, upon the following grounds: "(1) That the undisputed evidence shows the value of the property converted to be four hundred and fifty nine dollars and fifty cents. (2) That no justification or mitigating circumstances were shown by the defendant, and the amount of the property converted confessedly is in excess of the amount claimed by the plaintiff." The defendant also moved the court to direct a verdict for the defendant upon the following grounds: "(1) Because the mortgage was void as to the creditors of the mortgagor, because he was allowed to deal with the property for his own use, by selling and converting the proceeds of sale to his own use, and not accounting for them upon the mortgage, which fact was known to the holders of the mortgage, both before the payment to the bank and subsequent. (2) If it was fraudulent in part by allowing the mortgagor to sell goods in the ordinary course of business, and appropriate to his own use the proceeds of sale, it was thereby wrong, fraudulent and void as to his creditors, as to all the property covered by the mortgage. (3) The debt for which the note and mortgage were given as collateral security was fully paid and discharged, and thereby the note and mortgage became extinguished, and could not afterwards be revived by any subse-

quent agreement or acts of the mortgagor with other parties. (4) The indebtedness to the plaintiff, Locke, was an entirely new and different indebtedness from the one for which the note and mortgage were originally given as collateral, and between different parties; and the mortgage could not be revived to secure that indebtedness between these different parties. (5) If the mortgage and note were reissued they could not relate back and have any validity against intervening interests. (6) If reissued, it was not refiled or recorded. The reissuing would not make it a new mortgage, and, in the absence of a new filing and recording, it would have no validity against intervening interests. (7) If valid for any purpose in the hands of the plaintiff, it could not secure a greater sum than ninety-four dollars and twenty-four cents, being the balance of the debt that was paid by the plaintiff to the bank, when the mortgage was delivered to Havdahl. (8) Plaintiff caused a telegram to be sent to the defendant, and received a reply, which he relied upon; and the defendant having retained in his own hands the proceeds of the levy and sale, which is claimed to be conversion, and still has it in his hands, this was a waiver of the tort, and the obligation in favor of the plaintiff, if any exists, was in respect to the money held for his use and his protection by the defendant."

The defendant's motion was denied, and the motion of the plaintiff granted, to all of which the defendant duly excepted. The court thereupon charged the jury as follows: "Gentlemen of the jury, the direction which I give you is that you will find this note was given originally for the sum of three hundred and twenty dollars. Upon this note is an endorsement of one hundred and ten dollars. You will compute the interest on this note according to the methods of computing interest, deduct the payment, and bring in a verdict for that amount, with interest, if you find the plaintiff is entitled to interest. And, if you find that he is entitled to anything for special damages— that is, his time for the three hours he was employed in mak-

ing his demand—you will add that to the amount of the balance due upon the note and interest."

Without stopping to discuss the legal propositions contained in defendant's motion at length, it will be sufficient to say that, as the case stood, the defendant was not in a position to avail himself of the first two propositions, as without an execution he could not attack the plaintiff's mortgage. The third, fourth, fifth, sixth. seventh and eighth grounds will be considered generally in connection with the plaintiff's motion for the direction of a verdict.

The property when taken by the defendant, was not in plaintiff's possession. He cannot be heard to question defendant's right to it, unless he had a lien thereon. He did not have a lien if the debt for which the mortgage was given as security was paid. This is made clear by Section 4333, Comp. Laws, which reads as follows: "The existence of a lien upon property does not of itself entitle the person in whose favor it exists to a lien upon the same property for the performance of any other obligation than that which the lien originally secured." And Section 4341 provides: "A lien is to be deemed accessory to the act for the performance of which it is a security, whether any person is bound for such performance, or not, and is extinguishable in like manner with any other accessory obligation." This question of fact therefore arose: Did the giving of the check by plaintiff, and the subsequent delivery of the note to him, constitute a payment or an assignment? If an assignment, the lien continued for the amount actually paid by him; if payment, then the lien was extinguished, and defendant should have had a verdict. It appears from the evidence that Havdahl had resided in Garretson for many years, engaged in the drug business, and that the plaintiff was a practicing physician in that town, and occasionally. in the absence of Havdahl, attended to customers. Havdahl became indebted to the bank at Garretson on two notes, amounting to $319.85; and, to secure the payment of the same, he executed a note and chattel

mortgage to N. J. Diesher, trustee, for $320, and this note and mortgage were held by the bank as collateral for the said indebtedness of said Havdahl to the bank.    Payments were, from time to time, made by Havdahl to the bank, upon his two notes, until his indebtedness was reduced to the sum of $94.24.    The manner in which this note and chattel mortgage came into the hands of the plaintiff is thus stated by the cashier of the bank. He says:    "Dr. Locke came to the bank, and gave his check for the amount, and left hurriedly.    Understanding there was some agreement between Dr. Locke and Mr. Havdahl, I took this note, together with a few others that remained, and gave them to Havdahl, as the debt to the bank was paid."    The check left by Dr. Locke was for $320.    The cashier applied $94.24 upon Havdahl's indebtedness to the bank, and credited the balance to Dr. Locke's account in the bank.    The $320 note was not marked "Paid."    Dr. Locke told the cashier that he had arranged with Havdahl to take up that note.    It further appears that after Havdahl received the $320 note from the bank, he endorsed thereon $110 as paid, and then delivered the note to Dr. Locke, the plaintiff.    The evidence clearly shows that the $320 note and chattel mortgage were executed to Deisher as trustee, for the benefit of the bank, and as security for the two notes of Havdahl for $319.85, held by the bank.    When, therefore, the indebtedness of Havdadl was reduced to $94.24, which sum was paid by the plaintiff, the plaintiff, under the most favorable view, would only be entitled to recover that amount. The balance of the note had been paid by Havdahl, and the chattel mortgage and note were to that extent extinguished. It is true that the payments made by Havdahl were not endorsed by the bank upon this particular note, and the note, when delivered to Havdahl by the bank, bore the indorsement of N. J. Deisher, trustee, without recourse.    Had Deisher been the real owner of the $320 note and mortgage, and pledged it to secure Havdahl's indebtedness to the bank, he would have had the right, upon payment of Havdahl's two notes, to withdraw

his note and mortgage from the bank, and to transfer it to the plaintiff, who would have succeeded to Deisher's rights in the note and mortgage; and this seems to have been the theory of the learned county court. But Deisher had no interest in the note or mortgage. Being given to him as trustee for the bank, it is to be regarded, for the purposes of this decision, precisely as though made directly to the bank, by Havdahl, to secure his two notes. Upon the evidence before the trial court, as disclosed by the record in this court, the plaintiff was not entitled to a judgment in excess of $94.24, in any event; and hence the court erred in directing a verdict in excess of that sum, for which a new trial must be granted. The judgment of the county court and the order denying a new trial are reversed, and a new trial ordered.