In re INVESTMENT SALES DIVERSI-FIED, INC., Developers' Sales, Inc. and Developers' Sales Escrow, Inc., Debtors.

Dean A. BEUTEL, Plaintiff,

v.

William J. JOANIS, Trustee, Defendant.

Bankruptcy Nos. BKY 4–82–740, BKY 4–82–763 and BKY 4–82–764.

Adv. No. 4–82–670.

United States Bankruptcy Court, D. Minnesota.

March 14, 1984.

Ronald Groth of Thomson, Wahlfors, Moran & Groth, Ltd., Minneapolis, Minn., for plaintiff, Dean A. Beutel.

Virginia Dwyer of Briggs & Morgan, P.A., St. Paul, Minn., for William Joanis the trustee.

## ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

A trial was held in the above-titled declaratory judgment adversary proceeding before the Honorable Kenneth G. Owens on July 19, 1983. Ronald Groth of Thomson, Wahlfors, Moran & Groth, Ltd. represented the plaintiff, Dean Beutel (Beutel), and Virginia Dwyer of Briggs & Morgan, P.A. represented William Joanis the trustee. Due to the death of Judge Owens, this matter is to be determined by the undersigned bankruptcy judge. Based on the transcript of the proceedings and the briefs and arguments of counsel, this court finds the following:

## FACTS

1. The trustee is the acting Chapter 7 trustee in three interrelated bankruptcies: Investment Sales Diversified, Inc. (IDS), Developers' Sales, Inc. (DSI), and Developers' Sales Escrow, Inc. (DSEI).

2. IDS filed for Chapter 7 on April 23, 1982 and DSI and DSEI filed on April 27, 1982.

3. Beutel commenced this adversary action to determine the relative rights of the parties to an escrow fund available from the sale of a vendor's interest in a contract for deed involving certain real estate legally described as: "Lot 9, Block 2, Lakeview Point" (the "real estate") situated in Anoka County, Minnesota.

4. ISD was in the business of buying and selling mortgages and vendor's interests in contracts for deed. DSI was the broker for the transactions in which ISD was involved. DSEI served as manager and servicing agent for those contracts and mortgages. The debtor companies were intertwined to the extent that it is nearly impossible to distinguish the activities of one from another and will be referred to, in this order, collectively except where specific reference to one of the debtors is required.

5. The fee title to the real estate at the time of the petition was vested in Norman and Patricia Jorgensen, husband and wife, as joint tenants (the "Jorgensens").

6. The real estate was sold on July 1, 1981 by the Jorgensens to Crystal Development, Inc. (Crystal) on a Contract for Deed. The contract was filed for record on October 2, 1981.

7. Crystal sold the real estate to Donald C. and Susan D. Burgardt (the "Burgardts") on a Contract for Deed dated Sep-

tember 22, 1981. The contract was filed for record on September 23, 1981.

8. On September 22, 1981, Crystal transferred all of its interest in the real estate to ISD by quit claim deed. The deed was filed for record on August 9, 1982 (after the filing of the bankruptcy petitions). An Assignment of Contract for Deed to ISD was delivered but never filed for record.

9. ISD quitclaimed its interest in the real estate to Beutel on September 23, 1981. The deed was filed of record on August 9, 1982 (after the filing of the bankruptcy petitions).

10. The Burgardts were in possession of the real estate at the time the bankruptcy petitions were filed.

11. Beutel and ISD executed a purchase order for the real estate on September 23, 1981 in which the parties agreed that DSEI would manage the contract for deed for Beutel at a cost of $36.00 per year.

12. The parties further executed a Management Agreement on September 23, 1981 which delineated the rights of the parties in relation to the servicing of the contract. Pursuant to the purchase order and the Management Agreement, the Burgardts' payments on their contract for deed were received by DSEI on behalf of Beutel at the time the bankruptcy petitions were filed.

13. It was the company policy of ISD, DSI, and DSEI to record interests in contracts for deed. ISD's and Beutel's interests in this contract were not recorded by ISD due to a cash flow shortage in the debtors' operations prior to bankruptcy. Beutel had purchased at least six contracts through the debtors or their predecessor corporations, all the contracts had been duly recorded except the contract presently under discussion.

14. At least one of the debtors was a successor corporation to First Guaranty Venture, from whom Beutel purchased his first vendor's interest in a contract for deed. Sales brochures of First Guaranty shown to Beutel prior to his first purchase

stated that investors in First Guaranty were protected by the recording of documents with the Registrar of Deeds. Such recording was to be performed by First Guaranty.

15. First Guaranty and DSI (later ISD) entered into a consent order agreement with the Minnesota Commissioner of Securities in September of 1978 in which First Guaranty and DSI agreed, among other things, to record all assignments of vendor's interests in contracts for deed within 30 days of sale to the investor.

16. ISD, DSI, and DSEI maintained common filing systems and common offices. Each contract handled by the three corporations was given a contract number and the contracts were referred to by the three debtors by the same numbering system.

17. The Burgardts paid the balance due on the contract for deed and Beutel and the trustee have deeded by quit claim deed their interest in the property to the Burgardts. The proceeds of the payoff in the amount of $6,305.50 have been deposited in an escrow account pending the resolution of this dispute.

## DISCUSSION

### I. SECTION 541(d) AND THE SECONDARY MORTGAGE MARKET

Beutel argues that Section 541(d) of the Bankruptcy Code bars the trustee from avoiding the plaintiff's interest herein as that interest is part of a "bona fide secondary mortgage market" and is thus excluded from the debtors' estates under that section and not subject to the avoiding powers of the trustee. Section 541(d) states:

"Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, *such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest,* becomes property of the estate under subsection (a) of this

section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." (Emphasis added).

The plaintiff's argument is based on the underlined clause contained in 541(d) and the legislative history of the section. The legislative history of 541(d) reflects that the section is primarily a reiteration of Section 541(a), which includes the debtor's interest in property in the estate only to the extent held by the debtor prebankruptcy, with one specific application: "(t)he purpose of section 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees ...." Senate Debate, 95th Cong., 124 Cong.Rec. H 11864–66 (daily ed. Oct. 6, 1978).

■ I do not accept, for several reasons, the plaintiff's argument that the business of the debtors here, the buying and selling of vendor's interests in contracts for deed in a metropolitan area, falls within the definition of secondary mortgage market sales as defined by Congress when that body enacted Section 541(d). Congress intended that exclusion from property of the estate to cover the national market of sales of first mortgage interests by the primary mortgage originators and the purchase of those first mortgages by investors.

The cases in this area of the Code support the conclusion that the business conducted by the debtors here did not fall into the type of activity that Congress sought to protect with Section 541(d). *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 989 (Bkrtcy.N.D.Ga.1980), and *In re Columbia Pacific Mortgage, Inc.*, 20 B.R. 259 (Bkrtcy.W.D.Wash.1981) dealt with the bankruptcies of the first mortgage lenders and the rights of the creditors of the bankrupt, in particular those creditors who had purchased mortgage participation interests from the bankrupt debtors.

In *Columbia*, where the bankrupt, a residential mortgage company, had sold undivided participation interests in its loans to several savings and loan organizations, the court discussed Section 541(d) thusly:

"In an obvious effort to eliminate the uncertainties developing in the national secondary mortgage market and to promote that market by protecting participation interests in loans from challenge in bankruptcy, Congress enacted Sec. 541(d) .... Congress by enacting Sec. 541(d) confirmed the status of bona fide secondary mortgage transactions as the purchase and sale of assets."

*Columbia*, supra, at 261. See also *Adana*, supra, and its discussion of the legislative history of 541(d).

The debtors here do not come under the purview of the language of *Columbia* as the debtors were not engaged in a national market but a metropolitan one, were not involved in first mortgages but rather in contracts for deed and second and third mortgages, and, most importantly, the debtors were not the originators of first mortgages who then sold those first mortgages to investors, but rather served as the middlemen in the conduct of a seller-originated debt instrument market.

Judge Owens stated as a finding of fact in a related adversary proceeding arising from these bankruptcies: "... ISD (and DSI and DSEI), since July of 1978, had engaged in the business of brokering and managing real estate debt instruments, including mortgages and contract for deed vendor's interests." *F & M Marquette v. ISD*, Adv.Pro. 4–81–537 (1983) unreported decision, p. 2. Judge Owens later found as a fact in that proceeding that "(t)he market for vendor's interests in contracts for deed is separate from the recognized secondary mortgage market." *Id.* at p. 8. I concur with the conclusion reached by Judge Owens that at least where the debtors' business was the buying and selling of vendor's interests in contracts for deed, such was not a part of the recognized secondary mortgage market which Congress sought to protect from bankruptcy trustees through Section 541(d).

The plain wording of 541(d), as buttressed by the legislative history, indicates that the section was intended to protect the purchasers of the debt instruments where the seller retained legal title *for the purpose of servicing the mortgages* on behalf of the buyers. Such is not the case here. The debtors here retained an interest, legal or equitable, through a failure to file the assignments to the investors, not through a conscious decision by the parties to not record the interests.

As noted by the plaintiff here, the "such as" clause of 541(d) is only exemplary of one type of transaction, that of the secondary mortgage market, which would be excluded from the bankrupt's estate. The overriding principle of Section 541, that the estate takes property only to the extent the property was held by the debtor, will be discussed later herein; but I specifically hold that the business of the debtors was not carried on in the bona fide secondary mortgage market as recognized in Section 541(d), and therefore the secondary mortgage market language of that section does not bar the debtors' legal and equitable interests from becoming part of the estates, nor does that language bar the trustee from asserting his "strong arm" powers to gather those interests for the benefit of the estates.

## II. IMPOSITION OF A CONSTRUCTIVE TRUST

Beutel seeks to exclude the affected interest from the estates through the imposition of a constructive trust on the vendor's interest in the real estate and resulting escrow fund arising from the payment and satisfaction of the contract for deed. His argument is that he entrusted the duty to record the assignment of the vendor's interest to ISD/DSEI/DSI and paid, as part of the purchase price of the contract, for the debtors to record his interest and that the debtors retained interest in the realty solely through a failure to record Beutel's interest. The plaintiff further relies on the past course of performance between the parties, all previous assignments between

the parties being duly recorded by the debtors. Should such a trust be imposed, the bankruptcy estate, which succeeds to property to the extent that the debtors held the property, would not succeed to this property as the debtors and estate would hold bare legal title in favor of Beutel's equitable title and the trustee would be under an equitable obligation, as a constructive trustee and successor of the debtors, to convey the legal title to the holder of the equitable title. In short, the imposition of the trust would prevent the trust res from becoming part of the bankruptcy estate.

A constructive trust may be imposed against a bankruptcy trustee. *In re Kennedy & Cohen, Inc.*, 612 F.2d 963 (5th Cir.1980), cert. denied, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980), *In re Angus*, 9 B.R. 769 (Bkrtcy.D.Or.1981). Finding the existence of a constructive trust and determination of its applicability to the bankruptcy trustee are matters of state law, at least where, as here, the property upon which the trust is sought to be imposed is specified and traceable rather than a general asset within the bankruptcy estate. *In re Esgro, Inc.*, 645 F.2d 794 (9th Cir.1981). Thus, no federal supremacy argument exists in the present case.

## III. CONSTRUCTIVE TRUSTS UNDER MINNESOTA LAW

In general, a constructive trust arises where an abuse of a fiduciary relationship to the unjust enrichment of the breaching party is shown. However, a strict fiduciary relationship need not be shown. *Dietz v. Dietz*, 244 Minn. 330, 70 N.W.2d 281 (1955). Indeed, Minnesota law seems to require a standard of significantly less than a fiduciary relationship:

"(w)here a party obtains the legal title to land by fraud or bad faith, or by taking advantage of confidential or fiduciary relations, or in any other unconscientious manner, so that he cannot justly retain the property, equity will impress a constructive trust upon it in favor of the party who is equitably entitled to it."

*Henderson v. Murray*, 108 Minn. 76, 121 N:W. 214 (1909). In short, Minnesota recognizes a constructive trust as a flexible remedy designed to combat unjust enrichment. *Gethsemane Lutheran Church v. Zacho*, 253 Minn. 469, 92 N.W.2d 905 (1958).

It is clear that unjust enrichment would ensue should the debtors, or their successor-in-interest, the trustee, be allowed to retain the proceeds from the payoff of the Burgardts' contract. The parties contracted for the debtors to record the assignment for Beutel while Beutel was entitled, as intended by the parties, to receive the benefit of the Burgardts' payments. The debtors' and trustee's claim to the funds is based solely on the debtors' failure to properly record the conveyance of the vendor's interest from the debtors to Beutel. Failure to impose the trust would result in the debtors receiving not only the original purchase price paid by Beutel for the vendor's interest, but also in the trustee receiving the payments on the contract which equitably belong to Beutel, while Beutel would essentially have paid several thousand dollars and receive nothing.

Therefore, the issue at the heart of the imposition of a constructive trust is whether the relationship of the parties imposed the duty on the debtors to record the assignment to Beutel. It is first incumbent on the court to note the relationship of the parties was purely contractual (rather than a fiduciary relationship or any relationship resembling a fiduciary relationship). However, a constructive trust may still be imposed as no unyielding formula is required to create the trust. *Iverson v. Fjoslien*, 298 Minn. 168, 213 N.W.2d 627 (1973), *Dietz*, supra.

■ I am satisfied a constructive trust should be imposed here as the debtors had a contractual obligation to record the assignment of their interest in the realty to Beutel. Failure to perform that duty led to retention of the legal title in the debtors resulting in an equitable compulsion to convey their interest to Beutel.

The debtors' duty to record arises from the following facts:

1. The prior course of six similar dealings between the parties entailed the debtors recording the assignments. This was the first transaction between the parties left unrecorded and the plaintiff reasonably relied upon the past course of performance in his not seeking recordation of this quit claim deed. First Guaranty, as predecessor corporation of the debtors, used recordation of interests as a selling point in their sales brochures made available to Beutel and signed, along with DSI, a consent order agreement with state officials promising to record the interests promptly after sales to investors.

2. The purchase price paid by Beutel to DSI for the contract for deed included the costs of recording the deed by DSI. The unrebutted testimony of the salesman who sold this contract to Beutel, the debtors' in-house counsel, and the President of ISD was that the payment received from the investors would be deposited in a trust account in the name of one of the debtors, from which account the various arms of the debtor would receive disbursements, including disbursements to pay the costs of recording the various documents. The purchase price paid by the investors did not vary based on who recorded the interests. As such, the debtors had an obligation to record the assignments. The assignments were not recorded either through inadvertence or, more likely, a conscious decision on behalf of the debtors to use the withdrawn funds to meet operating expenses rather than to use the funds to record.

The relationship between the parties was such as to impose the duty to record on the debtors. Their violation of this duty was not only a breach of contract but borderline fraud and a violation of a confidence placed on the debtors by Beutel. As noted earlier, unjust enrichment would result through the debtors' retention of the title to the realty and any interest in the escrow fund. Therefore, the debtors were constructive trustees of Beutel's interest in the realty

and held the legal title to the property subject to his beneficial interest.

## IV. TRUSTEE AS SUCCESSOR TO THE DEBTORS

The trustee asserts that even if a constructive trust is imposed against the debtors, it cannot survive against the trustee as 11 U.S.C. Section 544(a)(3) gives the trustee the status of a state bona fide purchaser and M.S. Section 501.10 [1] bars the imposition of a constructive trust against a bona fide purchaser without notice of the trust. Beutel, basing his reasoning on *In re Fieldcrest Homes*, [2] 18 B.R. 678 (Bkrtcy.N.D. Ill.1982), and *4 Collier on Bankruptcy*, Sec. 541.13 (15th Ed.), counters that Section 544(a)(3) does not avail the trustee as a constructive trust blocks inclusion of the property in the estate under 541(d) and imposes the duty on the bankruptcy trustee, as successor constructive trustee, to turn over the trust res to the beneficiary of the constructive trust, rather than to collect the property for the estate.

These opposing viewpoints need not be distinguished in this case, however. Whether this court adopts the *Fieldcrest* court reasoning which elevates 541(d) over 544(a)(3) regardless of the trustee's status as state bona fide purchaser or adopts the rationale of the cases cited by the trustee, the result here is the same. For, as discussed in the following, this trustee is not a bona fide purchaser without notice of the existence of the constructive trust and therefore is not protected by M.S. Section 501.10.

The trustee had constructive notice (as discussed later) of the failure to record and of Beutel's interest and therefore cannot bar the imposition of the constructive trust against him. The trustee, as successor constructive trustee, is under an equitable duty to convey any interest held by the debtors to Beutel, as the bankruptcy trustee takes property subject to the same limitations on the property as in the hands of the debtors. Where the debtors were under an equitable duty to convey the property to the holder of the beneficial interest, so too is the trustee. Therefore, regardless of the differing interpretations of the relationship between 541(d) and 544(a)(3), under the facts present here a constructive trust exists under Minnesota law and the bankruptcy trustee holds only bare legal title in favor of Beutel's equitable interest and must convey his interest to Beutel, rather than include the interest in the bankruptcy estates.

## V. SECTION 544(a)(3)

The next point of contention between the parties is the power of the trustee to avoid the unrecorded assignment of the debtors' interest in the real estate to Beutel and the trustee's concurrent ability to recover the transfer for the benefit of the estate.

The trustee relies on 11 U.S.C. Section 544(a)(3), the "strong arm" clause of the Code, for his position. That section states:

"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

... (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists."

Section 544(a)(3) gives the trustee, as of the date of the filing of the petition, all of the "rights and powers" that a bona fide purchaser would have in relation to the

---

**1.** Minn.Stat. Section 501.10 states: "No implied or resulting trust shall be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust."

**2.** The *Fieldcrest* court held that a constructive trust could be asserted against a bankruptcy trustee notwithstanding his state bona fide purchaser status and that therefore 544(a)(3) would not avail the trustee.

unrecorded conveyance *under local state law* and the power to avoid an unrecorded conveyance avoidable by a state law bona fide purchaser who purchases from the debtor.[3] This status is conferred on the trustee regardless of whether such a bona fide purchaser actually exists in relation to the conveyance sought to be avoided, and regardless of the "knowledge" or *actual* or *personal notice* of the trustee at the time the bankruptcy petition was filed.[4]

The court, under 544(a)(3), must look to Minnesota real property law in order to determine the accoutrements of the bona fide purchaser status in this state and to determine whether a bona fide purchaser from the debtor could have avoided the conveyance to Beutel, and thus allow the trustee here to avoid the unrecorded conveyance to Beutel and recover the escrowed funds for the benefit of the estate.

## VI. VOIDABILITY OF AN UNRECORDED CONVEYANCE BY A BONA FIDE PURCHASER UNDER MINNESOTA LAW

■ Section 507.34 of *Minn.Stat.* is the state recording statute. That section provides: .

"Every conveyance of real estate shall be recorded in the office of the county recorder where such real estate is situated; and every conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate ... whose conveyance is first duly recorded ...."

A "subsequent purchaser in good faith and for a valuable consideration" under Minnesota law is a bona fide purchaser who gives consideration in good faith without actual or constructive notice of inconsistent rights in another. M.S. Sec. 507.34 does not protect a purchaser who has actual or constructive notice of outstanding rights in another, as the purchaser is then not a bona fide purchaser. *Anderson v. Graham Investment Co.*, 263 N.W.2d 382 (Mn. 1978). As the trustee becomes a bona fide purchaser as of the date of the bankruptcy petition, if notice which would forfend that status exists before the bona fide purchaser status is conferred, the trustee cannot subsume to the rights of a Minnesota bona fide purchaser, as no such purchaser could exist.

As noted in Part V, the trustee is not bound by actual notice of the rights of another contrary to his at the time of the bankruptcy petition. It is not insignificant that 544(a) uses the word "knowledge" in that knowledge generally connotes actual notice. The Code drafters used this language to eliminate arguments against trustees who had some type of familiarity with the facts of a case before the trustee was actually appointed to the case. No argument of actual notice against the trustee is made here, however.

■ However, the trustee is charged with constructive notice of claims contrary to his title under 544(a)(3) if an otherwise bona fide purchaser is charged with constructive notice under Minnesota real property law.[5] Clearly, such a Minnesota bona fide purchaser *is* bound by constructive notice.[6]

Under Minnesota real property law, there are two types of constructive notice which would bind the trustee in this case—constructive notice from possession of the realty by one other than the vendor, and constructive notice arising from the record title to the property.[7]

---

**3.** *McCannon v. Marston,* 679 F.2d 13 (3rd Cir. 1982), reh. den. 1982; *In re Morse,* 30 B.R. 52 (Bkrtcy.App. 1st Cir.1983).

**4.** *McCannon,* supra; *Morse,* supra.

**5.** *McCannon,* supra; *In re Richardson,* 23 B.R. 434 (Bkrtcy.D.Utah 1982); *In re Elin,* 20 B.R. 1012 (D.C.D.N.J.1982), aff'd. 707 F.2d 1400 (3rd Cir.1983).

**6.** *McAlpine v. Resch,* 82 Minn. 523, 85 N.W. 545 (1901); *Henschke v. Christian,* 228 Minn. 142, 36 N.W.2d 547 (1949).

**7.** As neither ISD's nor Beutel's interests were recorded, no argument as to record title as constructive notice has been made.

## VII. POSSESSION AS NOTICE

 Under Minnesota law, a prospective purchaser of real estate is charged with notice of whatever a reasonable inquiry would disclose concerning the title from the person in possession of the property:

> "The authorities are uniform that actual possession of real property is notice to all the world of the title and rights of the person so in possession, and also of all facts connected therewith which reasonable inquiry would have developed."

*Niles v. Cooper*, 98 Minn. 39, 107 N.W. 744 (Mn.1906).

 The Burgardts were in possession of the real estate at the time the petitions were filed. Beutel argues that the trustee is bound by what could be learned from inquiry of the possessors of the realty and from examination of the possessor's chain of title. Such examination and inquiry would reveal that at the time of the petition, the record title of the vendor's interest was in Crystal's name and the fee in that of the Jorgensens, and that the Burgardts were claiming under a contract for deed from Crystal. The key here is whether the bona fide purchaser could cease his inquiry at that point and remain a bona fide purchaser or whether further inquiry need be made. I am satisfied that, under these facts, "reasonable inquiry" would require more.

The trustee argues that: (1) possession is irrelevant because the interest conveyed the bona fide purchaser here was the vendor's interest while the Burgardts held the vendee's interest, and (2) that once a possessor asserts his claim, it is not notice of any conflicting claims on the same realty but merely notice of the possessor's interest.

I do not agree with the trustee's first contention. The trustee tries to forge an artificial schism between mortgages and contracts for deed under Minnesota law. As noted by Beutel, there is little difference between mortgages and contracts for deed in Minnesota. Where the rights of a bona fide purchaser are contrasted with those of his vendor and with those of the possessor of the property, those differences grow even smaller.

To argue that possession is not a right inherent in a vendor's interest of a contract for deed and therefore no inquiry need be made of the possessor (holder of the vendee's interest) is enticing but erroneous. An assignee of a mortgagee would seem to have no inherent right to possession in Minnesota (a lien mortgage state) yet it is doubtful the trustee would argue such assignee is not bound to inquire of the title of the possessor. Thus, the question devolves to one of determination of whether, under these facts, the trustee, as a purchaser from the debtor, must inquire as to the recipient of the payments made by the possessor of the real estate the trustee is seeking to acquire.

That the answer to this question is in the affirmative and the inconsistency between the entity which held record title and that which had actual title would be chargeable to the trustee here and thus put him on notice of both the debtors' and Beutel's interest is pointed out in *In re Forbrook Construction, Inc.*, 474 F.Supp. 876 (USDC D.Minn.1979). In that case, which involved the purchase of realty which was in the possession of a tenant, the court, the Honorable Harry H. McLaughlin presiding, noted that Minnesota law requires a purchaser of property in possession of a tenant to inquire of the tenant his interest and the interest of his landlord. The court then observed that the trustee had a duty to inquire of the landlord the nature of their title. Part of the inquiry of the landlords in *Forbrook* included the recipient of the landlords' contract for deed payments: "(T)he parties have stipulated that the ordinary and natural responses of the (landlords), had inquiry been made, would have revealed that they made payments under the contracts to J & F Enterprises." *Forbrook*, at 880. The court went on to state that since the landlords' interest was not of record, the bona fide purchaser had a duty to inquire of the interests of the recipient of the landlords' contract for deed payments.

■ The conclusion I draw from *Forbrook*, a case to which I am required to give great deference, is that when a party seeks to ascertain the title or interests of another as to realty, the purchaser has a duty, in certain factual settings, to determine more than just under whom the inquiree claims title. Reasonable inquiry of a party in possession under a contract for deed, even where the possessor holds under an ostensibly perfect chain of record title, would require inquiry as to the recipient of the contract payments and the recipient's interest in the realty. Ascertainment of the title and rights of the possessor would entail this type of inquiry, not necessarily in all cases, but under these facts, where the trustee takes as a purchaser from a holder of an unrecorded interest and stranger to the record title. Such facts would require an increased scrutiny as to the facts relevant to the possessor's title by the prospective purchaser as part of the "reasonable inquiry" test of the Minnesota Supreme Court and the prospective purchaser is not entitled to rely solely on the record title.

This result is consistent with *Niles*, supra, and its related cases. In *Nellas v. Carline*, 161 Minn. 157, 201 N.W. 299, 300 (1924), the court disposed of the subsequent purchaser's argument that reliance on the record title was sufficient where a party was in possession of the realty:

"Appellant's contention is that he had a right to rely upon the record title, and was not required to inquire whether respondents had any other interest in the premises than that disclosed by the record. The respondents were living upon the premises at the time. While the contract for deed had not been recorded, it made specific reference to the building contract, and, had plaintiff made inquiry of the occupants, he would, in all reasonable probability, have learned upon what right or theory respondents occupied the premises."

The court then went on to cite the "well settled" rule that possession of realty by one other than the vendor is sufficient notice to put a purchaser on inquiry as to the "particulars" of the possessor's claim of title. Surely, one of those particulars, under these facts, as pointed out in *Forbrook*, was the identity of the payment recipient.

The trustee's second contention, that once the purchaser declares his interest in the property his possession is not notice of claims other than his, is not well taken. The seminal case on this issue is *Thompson v. Lapsley*, 90 Minn. 318, 96 N.W. 788, 789 (1903), where the court said:

"Defendant having claimed a title in fee, plaintiff was justified in assuming that to be his (the defendant's) only right, and was not required to inquire whether he might not have some other interest in the land. The notice of the specific claim was operative only as to the particular claim made, and not as to some right or interest inconsistent with such claim."

It is apparent that this rule does not avail the trustee here as the interest sought to be discovered is not that of the asserting party, the possessor, but that of a third party. Further, the rights of ISD or Beutel or any other party claiming the vendor's interest are not *inconsistent* with the title asserted by the possessor. Thus, the reasonable inquiry rule is not circumvented.

Nor can the trustee defeat the claim of the plaintiff by interposing the lack of testimony in this case on behalf of the possessors, the Burgardts. The trustee argues that the disclosures by the Burgardts to a reasonable inquiry cannot be determined as the Burgardts did not testify in these proceedings. This argument is disposed of easily:

"The court will not speculate in cases of this character upon what might happen or be discovered if inquiry were made, but will presume, in the absence of evidence conclusively showing the contrary, that upon inquiry the *true situation* and claims of the possessor would be made known."

*Teal v. Scandinavian-American Bank of Grand Forks*, 114 Minn. 435, 131 N.W. 486 (1911) (Emphasis Added). Not only does

this language tend to extend the reasonable inquiry beyond the scope of merely ascertaining the possessor's claim of title, but places the burden on the party seeking to rebuke the constructive notice to show that other than the true situation would be revealed.

The trustee having not done so, I must proceed on the basis of assuming the true situation would have come to light upon inquiry. Such situation being a disparity between the record title holder, Crystal, and the payment recipient, DSEI, the purchaser has a duty to inquire of DSEI as to its interest in the realty, as its interest was not of record. *Forbrook, supra.* Inquiry of DSEI would have revealed that it was acting as a manager of the contract for deed, such contract having been quitclaimed by ISD to Beutel and then having been left unrecorded.

This information would, under Minnesota law, place the trustee on constructive notice of Beutel's prior claim and thus the trustee here is not a bona fide purchaser without notice, and may therefore not avail himself of either M.S. 507.34 or M.S. 501.-10 [8] as constructive notice existed at the commencement of the bankruptcy proceedings.

As no bona fide purchaser could exist as of the commencement of the bankruptcies, due to the constructive notice charged to the trustee, the trustee may not use his 544(a)(3) powers [9] to avoid the unrecorded interest of Beutel and collect the escrowed funds for the benefit of the estates.

### CONCLUSION AND ORDER

Therefore, based on the above discussion, I conclude:

1. The debtors were not engaged in the secondary mortgage market, nor did their actions fall under the specific secondary mortgage market language of 11 U.S.C. 541(d).

2. A constructive trust under Minnesota law arises from the acts of, and against, the debtors as to this real estate and resulting escrow fund. Such trust is applied to the bankruptcy trustee as successor constructive trustee from the debtor and therefore the equitable interest, and escrow fund, never became, nor shall become, part of the bankruptcy estates of these debtors, and the trustee is under an equitable compulsion to convey his interest in the realty and escrow fund to Beutel.

3. The trustee may not avoid the unrecorded conveyance from the debtors to Beutel under 11 U.S.C. 544(a)(3) as the trustee had, as of the commencement of the case, constructive notice of the interest of Beutel in the realty.

4. The plaintiff's rights to the escrowed funds are superior to those of the trustee and the plaintiff is entitled to the escrow fund including any interest accumulated as part of that fund.

THEREFORE, IT IS HEREBY ORDERED that the above-mentioned escrowed funds be forthwith paid over to the plaintiff herein, free from any claim or interest asserted by the trustee on behalf of the estates of the bankrupt debtors.

---

8. In relation to the constructive trust argument, the same analysis as the above ensues upon the filing of the bankruptcy petition, and the trustee is charged with notice of the interest of Beutel and of the circumstances giving rise to the imposition of the trust.

9. 544(a)(3) declares that the trustee must be in a position that would allow perfection against his interest under state law. Recordation of Beutel's interest would defeat the trustee's interest and thus complete the framework of 544(a)(3), whether or not such perfection actually occurs.