In re INVESTMENT SALES DIVERSI-FIED, INC., f/k/a Developers' Sales, Inc., Developers' Sales, Inc., Developers' Sales Escrow, Inc., Debtors.

William J. JOANIS, Trustee, Plaintiff,

v.

WAYZATA BANK & TRUST COMPANY, Helen Argue, Carole E. Zajac, Christine Muegge, First Guaranty Corporation, Richfield Bank & Trust Company as Trustee for.Gordon Christianson, Sylvester Killeen and Anne Regan, Defendants.

Bankruptcy Nos. 4–82–740, 4–82–763 and 4–82–764.
Adv. No. 4–84–72.

United States Bankruptcy Court, D. Minnesota.

May 24, 1985.

Michael D. Schwartz, Schwartz & Corey, P.A., Minneapolis, Minn., for debtors.

Manly A. Zimmerman, Zimmerman & Bix, Minneapolis, Minn., for Wayzata Bank & Trust.

William J. Joanis, Briggs & Morgan, P.A., St. Paul, Minn., Trustee.

Ronald H. Groth, Thompson, Wahlfors, Moran & Groth, Minneapolis, Minn., for Argue & Muegge.

MARGARET A. MAHONEY, Bankruptcy Judge.

The above-entitled matter came on before the Honorable Margaret A. Mahoney, Bankruptcy Judge, upon the parties' stipulated facts and written arguments. The Plaintiff, the Chapter 7 Trustee in the related bankruptcy cases, alleges in his complaint that certain transfers of real property to the Defendants in this matter are voidable and includable as property of the estate pursuant to 11 U.S.C. §§ 544, 550, and 541 and applicable state law. This court has jurisdiction to hear and decide

this matter pursuant to 28 U.S.C. §§ 1334 and 157, and Judge Lord's July 27, 1984, Order of Reference.

FACTS

The Plaintiff in this matter is the acting Chapter 7 Trustee in three inter-related bankruptcies: Investment Sales Diversified, Inc. (ISD), Developers' Sales, Inc. (DSI), and Developers' Sales Escrow, Inc. (DSEI). ISD filed its Chapter 7 proceeding on April 23, 1982, and DSI and DSEI filed Chapter 7 petitions on April 27, 1982. ISD was in the business of buying and selling mortgages and vendor's interests in contracts for deed. DSI was the broker for the transactions in which ISD was involved. Moreover, DSEI served as manager and servicing agent for those contracts and mortgages. The Debtor companies were intertwined to the extent that it is nearly impossible to distinguish one from the other in that they maintained a common office and a common filing system. For the purpose of this adversary proceeding, the Debtor companies will be referred to collectively as the "Debtors," except where specific reference to one of the Debtors is necessary.

### 1. *Defendant Wayzata Bank & Trust Company*

The property which is the subject of the dispute herein is the ownership of a vendor's interest in a contract for deed covering real estate situated in Hennepin County, Minnesota, and legally described as Lot 10, Block 2, Fisk's Addition to Minneapolis. The file number utilized by the Debtors with respect to this transaction was 8536A.

Prior to April 1, 1981, Richard C. and Delores J. Simonson, husband and wife, were the equitable owners of the real estate which they were purchasing from Leander James and Mary E. Schlosser, husband and wife. On June 5, 1981, the Schlossers delivered a warranty deed to the Simonsons and that deed was recorded on June 22, 1981. Approximately two months earlier, on April 1, 1981, the Simonsons had entered into a contract for deed with Shane E. Cunningham whereby the Simonsons

sold the real estate to Cunningham, who remained in possession of such real estate at the time the bankruptcy petitions were filed.

On or about June 5, 1981, ISD purchased the vendor's interest in the contract for deed and obtained an assignment of the contract for deed and warranty deed from the Simonsons. That warranty deed was recorded on June 22, 1981.

On April 14, 1981, the Defendant Wayzata Bank and Trust Company (Bank), as trustee for Clinton Bliss, entered into an agreement with DSI under which agreement the Bank purchased an undivided 19 percent vendor's interest in the contract for deed between the Simonsons and Cunningham. Pursuant to that agreement, DSEI was to manage the contract. On June 19, 1981, ISD assigned the aforesaid 19 percent vendor's interest in the contract for deed between the Simonsons and Cunningham to the Bank as trustee for Bliss. Although both the assignment of the contract for deed and the warranty deed from ISD to the Bank were dated June 19, 1981, they were not notarized until February 16, 1982. Neither document was filed of record at the time the bankruptcy petitions were filed. On or about June 19, 1981, the Bank paid ISD the consideration previously agreed to on April 14, 1981.

The Bank and DSI entered into an agreement dated April 14, 1981, pursuant to which the parties agreed that DSEI would manage the contract for deed for the Bank at a cost of $36 per year. The Bank and DSEI further executed a management agreement which described the rights of the parties in relation to the servicing of the contract. Pursuant to the agreement, Cunningham's payments on the contract for deed were received by DSEI on behalf of the Bank. Such an arrangement was in effect at the time the bankruptcy petitions were filed.

On or about June 19, 1981, at the same time as the Bank was completing its transaction, Richfield State Bank, as trustee for Harold E. Hilbrand, paid for the remaining

81 percent vendor's interest in the contract for deed between the Simonsons and Cunningham, and obtained the necessary documents to record its interest in the premises. Those documents were recorded prior to the filing of the bankruptcy petitions, and the Plaintiff has not attempted to avoid the interest of Richfield State Bank as trustee in its 81 percent of such contract for deed.

Subsequent to the filing of the bankruptcy petitions, Lakes Realty purchased from Cunningham the real estate by extending the contract for deed. In order to approve such extension, the parties agreed that the Bank would hold the title for convenience purposes and in trust pending the resolution of this dispute. The total equity in the 19 percent vendor's interest in the contract for deed is approximately $4,000.

## 2. *Defendant Helen Argue*

The property which is the subject of the dispute between the Plaintiff and Defendant Argue is real estate situated in Ramsey County, Minnesota, and legally described as Lot 9, Block 4, Excelsior Park, according to the recorded plat thereof. The file number utilized by the Debtors with respect to this transaction was 8520. The record fee owner of the subject real estate has at all relevant times been the Administrator of Veterans' Affairs (Administrator).

The Administrator entered into a contract for deed with Arthur D. and Sharon M. Larson, which contract for deed was subsequently filed of record. The Larsons sold the real estate to Johnny and JoAnne Byers on a contract for deed dated February 5, 1980, and filed of record on February 14, 1980. The Byers subsequently entered into a contract for deed with Thomas J. Geermscheid on September 28, 1981. It was filed of record on November 16, 1981. Geermscheid remained in possession of the real estate at the time the bankruptcy petitions were filed.

The Byers assigned their interest in the contract for deed with Geermscheid to ISD by an assignment dated September 28, 1981, and a quit claim deed dated September 28, 1981. The quit claim deed was filed of record on November 16, 1981. ISD assigned its interest in that contract for deed to defendant Argue by an assignment of contract for deed and a quit claim deed, each of which are dated September 29, 1981. Neither the assignment of contract for deed or the quit claim deed were filed of record.

Argue and DSI entered into an agreement dated September 14, 1981, pursuant to which the parties agreed that DSEI would manage the contract for deed for Argue at a cost of $36 per year. The parties further executed a management agreement which delineated the rights of the parties in relation to the servicing of the contract. Pursuant to the agreement between Argue and the Debtors, Geermscheid's payments on the contract for deed were received by DSEI on behalf of Argue. Such an arrangement was in effect at the time the bankruptcy petitions were filed.

## 3. *Defendant Christine Muegge*

The property which is the subject of this dispute between the Plaintiff and Defendant Muegge is real estate situated in Scott County, Minnesota, and legally described as Lot 1, Block 1, Grommesch Estates. The file number utilized by the Debtors with respect to this transaction was 8316B. The record fee owner of the real estate was, as of August 11, 1980, David J. and Linda L. Grommesch.

The Grommeschs sold the real estate on a contract for deed to Michael G. and Margaret D. LaPlant by a contract dated August 11, 1980, which was filed for record on August 12, 1980. The Grommeschs transferred their interest in the real estate to ISD by warranty deed dated May 8, 1981, and filed May 11, 1981.

On August 25, 1981, ISD assigned an undivided 21.5 percent interest in that contract for deed to Defendant Muegge. The assignment was dated August 25, 1981, and was filed on May 3, 1982. The LaPlants remained in possession of the real estate at the time the bankruptcy petitions were filed.

Muegge and DSI entered into an agreement dated August 18, 1981, pursuant to which the parties agreed that DSEI would manage the contract for deed for Muegge. The parties further executed a management agreement which delineated the rights of the parties in relation to the servicing of the contract. Pursuant to the agreement between Muegge and the Debtors, the contract for deed payments were received by DSEI on behalf of Muegge and such an agreement was in effect at the time the bankruptcy petitions were filed.

Pursuant to an agreement between the plaintiff and Muegge dated June 17, 1983, the parties conveyed fee title to the La-Plants, the vendees of the contract for deed described above. The Court entered an Order dated May 10, 1983, approving the making of that agreement. Pursuant to said agreement, a bank account was opened at First National Bank of St. Paul bearing account no. 7701–02–0 entitled "Christine Muegge and William J. Joanis, trustee, escrow account." The sum of $4,137.50 was deposited in that interest-bearing account.

\* \* \*

At the time all three Defendants purchased their respective contract for deed interests from the Debtors, they each paid a price which included an amount necessary to file the conveyances of record. The sales brochures of the Debtors and their predecessor, First Guaranty Corporation, stated that investors were protected by the recording of documents with the County Recorder and that the Debtors would record such documents. Furthermore, it was the stated company policy of the Debtors to record interests in contracts for deed. The Defendants' respective interests in the contracts for deed were not recorded by the Debtors due to a cash flow shortage in the Debtors' operations prior to the bankruptcy.

First Guaranty Corporation and DSI entered into a consent agreement with the Minnesota Commissioner of Securities in September 1978, in which the First Guaranty Corporation and DSI agreed, among other things, to record all assignments of vendor's interests in contracts for deed within 30 days of sale to the investor. ISD later entered into a similar consent agreement with the Commissioner. The Debtors were the largest companies in the Twin City metropolitan area engaged in the business of buying and selling contracts for deed.

## DISCUSSION

The Trustee correctly characterizes this matter in both his complaint and brief as an action to avoid transfers of vendors' interests in contracts for deed pursuant to 11 U.S.C. §§ 550 and 544(a)(3). As intimated to a certain extent by both parties, however, it may be more narrowly described as presenting before me the issue of whether the decision in *In re Investment Sales Diversified, Inc.*, 38 B.R. 446 (Bkrtcy.D.Minn. 1984) (*I.S.D. I*), should be applied to the present facts. By the plain reading of the *I.S.D. I* decision, as well as the pleadings, stipulated facts, and briefs regarding this cause of action, it is apparent that in all material respects the facts and issues in both *I.S.D. I* and the present matter are identical.[1]

### A. Collateral Estoppel

In light of the identity of facts and issues presented in both actions, as well as the Trustee's integral participation in *I.S.D. I*, it is necessary to address, as a preliminary matter, the extent to which the trustee may now be collaterally estopped from pursuing similar relief against the Defendants herein. Despite reasons grounded in public policy favoring such estoppel, I am constrained to hold that the doctrine has no application to this controversy.

The United States Supreme Court effectively abandoned the mutuality requirement of collateral estoppel in 1971 as to cases in federal courts applying federal

---

**1.** The court's factual findings in *I.S.D. I* bear such significant similarity to the stipulations of facts submitted by the parties herein that it is clear that the only real divergence sought by the Trustee from the earlier decision are the legal conclusions to be drawn therefrom.

law. *See Blonder-Tongue Lab., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Under the rule adopted in *Blonder-Tongue*, a plaintiff is estopped from relitigating those issues which were unsuccessfully litigated by the plaintiff against a different defendant in an earlier proceeding, unless the plaintiff establishes that he did not have a full and fair opportunity to litigate such issues in the first proceeding. *See Blonder-Tongue, id.* at 329–34, 91 S.Ct. at 1443–45; *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326–28, 99 S.Ct. 645, 649–50, 58 L.Ed.2d 552 (1979) (expanding defensive use of collateral estoppel as well). Defensive use of collateral estoppel outside the context of mutuality retains the dual purpose of protecting litigants from the burden of relitigating issues identical to those previously litigated and of promoting judicial economy by preventing presumably needless litigation. *Parklane Hosiery*, 439 U.S. at 326, 99 S.Ct. at 649.

There appears to be some support for the application of collateral estoppel to the legal issues raised by the Trustee. *See* 1B J. Moore, Moore's Federal Practice ¶ 0.448, at 846 (1984) ("[I]n the absence of significant factual differentiation between separable facts, it is reasonable to assume that a change in the applicable law, or at least in the 'legal atmosphere,' must intervene if collateral estoppel is not to be applied in a later suit."). Whatever the possible merits of applying collateral estoppel to primarily legal questions, however, it is clear in this case that the decision in *I.S.D. I* has only *stare decisis* effect.

Federal Rule of Civil Procedure 8(c), which applies in adversary proceedings pursuant to Bankruptcy Rule 7008, provides that "[i]n pleadings to a preceding pleading, a party shall set forth affirmatively ... estoppel, ... res judicata ... and any other matter constituting an avoidance or affirmative defense." This language has been interpreted to require a party to plead such affirmative defenses as a prerequisite to relying on them at trial. Where the defense has not been properly pleaded, it has generally been held that it has been waived and may not be relied upon. *See Nevels v. Hanlon*, 656 F.2d 372 (8th Cir.1981) (failure to raise res judicata in pleadings or at trial deemed waiver of defense); *Alsager v. District Court of Polk County, Iowa (Juvenile Division)*, 518 F.2d 1160 (8th Cir.1975) (res judicata or collateral estoppel effects of state court's findings cannot be considered where not pleaded by defendants); *Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809 (8th Cir.1969) (where estoppel was not pleaded, called to the attention of the district court, or passed upon by that court, it cannot be raised on appeal).

■ In the present matter, both parties cite and argue for or against the *I.S.D. I* decision in their briefs. Nowhere, however, is collateral estoppel affirmatively pleaded or otherwise relied upon by the Defendants. Absent any clearer indication that the issue has been effectively raised, I must conclude that the Defendants have waived their right to assert such defense.

## B. *Trustee's Section 544(a)(3) Avoiding Power*

The Trustee asserts, in clear contradiction to the decision in *I.S.D. I*, that by virtue of 11 U.S.C. §§ 544(a)(3) and 550 he should be entitled to avoid transfers to the Defendants of vendors' interests in contracts for deed and recover such interests for the benefit of the estate. To the extent that *I.S.D. I* precludes any avoidance and consequent recovery for the estate, the Trustee urges that the decision not be followed in this matter.

Section 544(a)(3), one of three tentacles emerging from what has aptly been referred to as the "strong arm clause" of the Bankruptcy Code, provides as follows:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . .

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (1982), *amended by* 11 U.S.C.A. § 544(a)(3) (1985). The Trustee contends that pursuant to Minnesota law and section 544(a)(3), his status as a hypothetical bona fide purchaser of real property from the debtor enables him to avoid the prior, unrecorded transfers by the debtor of vendors' interests in three contracts for deed. Such property interests, he asserts, are thereby recoverable for the benefit of the estate under 11 U.S.C. § 550.[2] The bankruptcy court carefully considered the Trustee's contentions in *I.S.D. I*, but held that the vendor's contract for deed interest at issue therein could not be avoided. The court based its decision on the determination that the Trustee had constructive notice of the opposing party's prior claim.[3] In the present matter, the Defendants request that I adopt the rationale and holding of the court in *I.S.D. I*.

█ It is undisputed that section 544(a)(3) confers upon the Trustee, as of the date the bankruptcy petition is filed, all of the rights and powers that a bona fide purchaser would have under state law, including the right and power to avoid a prior, unrecorded conveyance which is avoidable by an actual bona fide purchaser

from the debtor. Whether such a bona fide purchaser actually exists, however, is irrelevant. Moreover, this status is conferred upon the Trustee under section 544(a)(3) regardless of his own personal knowledge of any relevant facts. *Matter of Rieber*, 740 F.2d 10, 12 (8th Cir.1984); *McCannon v. Marston*, 679 F.2d 13, 16–17 (3rd Cir. 1983); *In re Harter, Inc.*, 31 B.R. 1015, 1020 (D.Kan.1983); *In re Morse*, 30 B.R. 52, 54–55 (Bktcy.App. 1st Cir.1983); *In re Taylor*, 43 B.R. 524, 528 (Bktcy.N.D.Ala. 1984); *In re Dlott*, 43 B.R. 789, 792–93 (Bktcy.D.Mass.1983); *In re Duffy-Irvine Associates*, 39 B.R. 525, 528–29 (Bktcy.E.D. Pa.1984); *I.S.D. I*, 38 B.R. at 452–53. The existing authorities indicate, though, that Congress did not intend to eliminate all protections accorded under state law to holders of equitable interests. Thus, it has consistently been held that, where state law so provides, a Trustee charged with constructive notice of such prior interests may not rely on his bona fide purchaser status to avoid those interests. *See e.g., Matter of Rieber*, 740 F.2d at 12; *McCannon v. Marston*, 679 F.2d at 16–17; *In re Taylor*, 43 B.R. at 528 n. 3; *In re Dlott*, 43 B.R. at 793, *I.S.D. I*, 38 B.R. at 453.

█ Minnesota law, concerning the voidability of unrecorded conveyances of real property, is governed by Minn.Stat. § 507.-34, the state recording statute. That section provides:

Every conveyance of real estate shall be recorded in the office of the county recorder of the county where such real

---

**2.** Section 550 provides in relevant part as follows:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; . . . .

11 U.S.C. § 550(a)(1) (1982), *amended by* 11 U.S.C.A. § 550(a)(1) (1985).

**3.** The court in *I.S.D. I* further indicated that, by virtue of a constructive trust imposed upon the Debtors, the Trustee was thereby under an eq-

uitable obligation as a constructive trustee and successor of the Debtors to convey the legal title to the opposing party—the holder of the equitable title. The Trustee, relying on his status as bona fide purchaser under 11 U.S.C. § 544(a)(3), contended that Minn.Stat. § 501.10 barred the imposition of a constructive trust against himself. Section 501.10 provides: No implied or resulting trust shall be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust. Minn.Stat. § 501.-10 (1984). The court held, however, that its determination that the Trustee had constructive notice of the prior claim effectively removed such bar.

estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate ... whose conveyance is first duly recorded.... Minn.Stat. § 507.34 (1984). A "subsequent purchaser in good faith and for a valuable consideration" has been interpreted to constitute a bona fide purchaser who gives consideration in good faith without actual or constructive notice of inconsistent outstanding rights of others. *Anderson v. Graham Investment Co.*, 263 N.W.2d 382, 384 (Minn.1978). By the plain reading of the statute and interpretive case law, therefore, it is clear that the law in this state does not protect a purchaser who has either actual or constructive notice of inconsistent rights in another. Section 544(a)(3) of the Bankruptcy Code, as it relates to Bankruptcy Trustees, limits the protection accorded holders of equity interests under state law by nullifying the effect of the trustee's personal knowledge. In this state, however, the trustee remains bound by whatever relevant constructive notice exists. *I.S.D. I*, 38 BR. at 453.

■ The primary issue in this matter, then, is whether the trustee may be charged with constructive notice of the Defendants' prior vendors' interests in the three contracts for deed. Under Minnesota law, the trustee may receive constructive notice of inconsistent rights by way of: (1) record title of another to the subject property, *see, e.g., Anderson v. Graham Investment Co., supra;* and (2) possession of the property by one other than the vendor, *see, e.g., In re Forbrook Construction, Inc.*, 474 F.Supp. 876 (D.Minn.1979); *Farmers' State Bank of Eyota v. Cunningham*, 128 Minn. 244, 234 N.W. 320 (1931); *Niles v. Cooper*, 98 Minn. 39, 107 N.W. 744 (1906). As the parties do not dispute that Defendants' vendors' interests were never recorded, it is clear that constructive notice did not arise by way of record title. Therefore, to the extent that constructive notice might have existed, it must have arisen out of possession of the respective properties by persons other than the Defendants.

In *I.S.D. I*, the court discussed the relevant case law, concluding that, as to the property at issue, the trustee had constructive notice of the opposing party's unrecorded, vendor's interest. As a springboard for its analysis, the court noted that under the law of this state "a prospective purchaser of real estate is charged with notice of whatever a reasonable inquiry would disclose concerning the title from the person in possession of the property." *I.S.D. I*, 38 B.R. at 454. *See Niles v. Cooper*, 98 Minn. 39, 107 N.W. 744 (1906). Acknowledging that certain limited inquiry and examination of the possessor's chain of title would fail to reveal the vendor's interest at issue, the court determined that "reasonable inquiry" would require more. Relying principally upon *In re Forbrook Construction, Inc.*, 474 F.Supp. 876 (D.Minn.1979), it held that, where the trustee takes as a purchaser from a holder of an unrecorded interest and stranger to the record title,

> [r]easonable inquiry of a party in possession under a contract for deed, even where the possessor holds under an ostensibly perfect chain of record title, would require inquiry as to the recipient of the contract payments and the recipient's interest in the realty.

*I.S.D. I*, 38 B.R. at 455.

Applied to the present facts, reasonable inquiry, as construed in *I.S.D. I*, would reveal that the payment recipient on each contract for deed was DSEI, which had agreed to manage all three contracts, and which had no direct ownership interest in the respective vendors' interests whatsoever. Specifically, reasonable inquiry of DSEI's interest in the properties would have ultimately revealed, not only the interests of ISD, but of the Defendants as well. *See I.S.D. I*, 38 B.R. at 455–56. *Cf. Teal V. Scandinavian-American Bank of Grand Forks*, 114 Minn. 435, 131 N.W. 486 (1911) (court will presume, in the absence of evidence conclusively showing the contrary, that upon inquiry the true situation and

claims of the possessor of realty would be made known).

With due deference to the court's thorough analysis in *I.S.D., I,* would adopt a narrower construction of the trustee's duty to conduct reasonable inquiry. The law in this state is that possession is constructive notice of title of the possessor, as well as of whatever rights the possessor has which would be disclosed upon reasonable inquiry. *West Concord Conservation Club v. Chilson,* 306 N.W.2d 893, 896 (Minn.1981); *Anderson v. Graham Investment Co.,* 263 N.W.2d 382, 384–85 (Minn. 1978); *Konantz v. Stein,* 283 Minn. 33, 42–43, 167 N.W.2d 1, 8 (1969); *Farmers State Bank of Eyota,* 182 Minn. 244, 246, 234 N.W. 320, 321 (1931); *Nellas v. Carline,* 161 Minn. 157, 159, 201 N.W. 299, 300 (1924); *Niles v. Cooper,* 98 Minn. 39, 42–43, 107 N.W. 744, 745 (1906). As a corollary to this rule, it is equally well settled that possession of real property by a tenant is constructive notice of the particulars of the tenant's rights and interests as well as of the title of his landlord. *Oxborough v. St. Martin,* 142 Minn. 34, 36, 170 N.W. 707, 708 (1919); *Northwestern Land Co. v. Dewey,* 58 Minn. 359, 363–64, 59 N.W. 1085, 1085–86 (1894); *Wilkins v. Bevier,* 43 Minn. 213, 215–16, 45 N.W. 157, 158 (1890); *Morrison v. March,* 4 Minn. 422, Gil 325, 334 (1860). In both cases, it is apparent that the purpose behind extracting such constructive notice from possession is to protect the possessor, and any landlord of the possessor, from the acts of others who do not derive their title from either the possessor or his landlord. *Cf. In re Harter, Inc.,* 31 B.R. 1015, 1020–21 (D.Kan.

1983) (interpreting Kansas law and quoting *McNeil v. Jordan,* 28 Kan. 7, 16 (1882)).[4]

An analysis of the case law in this state fails to establish to my satisfaction any broader purpose for the rules at issue other than to protect the possessor and, in the case of a leasehold situation, the landlord. To extend, the duty of reasonable inquiry beyond either the possessor or landlord would seem inconsistent, not only with the apparent purpose of the rules, but with the concept of constructive notice from record title as well. Specifically, I interpret the decision in *I.S.D. I* as effectively discouraging the recordation of many property interests by placing a substantial burden on subsequent purchasers to engage in conceivably endless inquiry commencing backwards from those persons in possession.[5] Such inquiry does not appear to have been contemplated either by the Minnesota Supreme Court, as evidenced by the bountiful case law on the subject, or the Minnesota legislature, as evidenced by its enactment of the recording statute.

In *I.S.D. I,* however, the court necessarily relied upon the district court's decision in *In re Forbrook Construction, Inc.,* 474 F.Supp. 876 (D.Minn.1979). In *Forbrook,* the trustee in bankruptcy sought to avoid an allegedly preferential transfer from the bankrupt to the defendant of the vendors' interests in two contracts for deed. The contract vendees, who had leased out the property, made their payments on the contract for deed to an intermediary corporation which, after deducting first mortgage payments and service charges, transferred the balance to the defendant. Neither the contracts for deed nor the assignment of

---

4. *See Groff v. Ramsey,* 19 Minn. 24 (1872). In *Groff,* the Minnesota Supreme Court characterized the rule adopted in *Morrison v. March,* 4 Minn. 422, Gil 325, (1860), as establishing that "the actual possession of a tenant not only *protects him* in the enjoyment of his term, but is notice of his landlord's title." *Groff,* 19 Minn. at 35 (emphasis added). Impliedly, if not expressly, Minnesota recognizes a purpose behind the rule of constructive notice by way of possession which is consonant with that recognized by the Kansas Supreme Court. For other cases favorably quoting the language in *Groff,* see *Ludowese v. Amidon,* 124 Minn. 288, 294, 144 N.W.

965, 968 (1914); *Wilkins v. Bevier,* 43 Minn. 213, 215–16, 45 N.W. 157, 158 (1890).

5. While the court in *I.S.D. I,* emphasized that this extensive inquiry was mandated only under the peculiar facts of that case, *see I.S.D. I,* 38 B.R. at 455, I fail to see a sufficiently material distinction between such facts and other circumstances in which the issue might arise. As the trustee steps into the shoes of a hypothetical bona fide purchaser, the true character of his status should be irrelevant.

vendors' interests to the defendant were recorded prior to Forbrook's adjudication of bankruptcy. Finding no constructive notice to a hypothetical bona fide purchaser, the bankruptcy court deemed the transfer insufficiently perfected to take it out of the four-month preference period provided for in 11 U.S.C. § 96(a)(2).[6] The district court reversed, however, holding that a bona fide purchaser would have had constructive notice of the defendant's unrecorded vendors' interests. Specifically, the court determined that Minnesota law imposed a duty of inquiry that extended backwards from the contract vendees' tenants to the vendees, the intermediary corporation which collected the contract payments, and finally the defendant.

■■■ While, as already indicated, I interpret Minnesota law more narrowly on this subject, I am compelled to follow the district court's decision absent any material factual distinction between *Forbrook* and the present matter. *See Eaton Land & Cattle Co. II v. Rocky Mountain Investments,* 28 B.R. 890, 892 (Bktcy.D.Colo. 1983); *In re V–M Corp.,* 23 B.R. 952, 954–55 (Bktcy.W.D.Mich.1982); *In re Bill Ridgway, Inc.,* 4 B.R. 351, 353 (Bktcy.D.N.J. 1980); *cf. In re Hubbard,* 23 B.R. 671, 673–74 (Bktcy.S.D.Ohio 1982) (court not bound to follow district court decision in different division of same district where

bankruptcy appeals to district courts remain within the respective division).[7] On this subject, the trustee contends that *Forbrook* can be distinguished on the basis that the realty in that case was in the possession of *tenants*—not the contract vendees. Although the trustee's distinction is not without some support,[8] I am unable to conclude that it is sufficient to permit a different result in the present matter. Certainly, a tenant's leasehold interest is different from that of the contract vendee. This distinction explains why a purchaser's duty of inquiry extends to the landlord, who presumably possesses the interest the ordinary purchaser desires. The trustee's distinction, however, fails to account for extending the duty of inquiry beyond the landlord.

■■ I am unable to attach sufficient relevance to the mere fact that in *Forbrook* the persons in possession were the vendees' tenants. While I do not share the interpretation of Minnesota law espoused in either *Forbrook* or *I.S.D. I,* I am bound by the principle of *stare decisis* to follow the decision of the district court. I am aware of no intervening case law in this state, nor has the trustee cited any, that would now permit any deviance from the established law in this district.

6. Section 96(a)(2) provides in relevant part as follows:

> A transfer of real property shall be deemed to have been made or suffered when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of the transferee. If any transfer of real property is not so perfected against a bona fide purchase ... it shall be deemed to have been made immediately before the filing of the petition. 11 U.S.C. § 96(a)(2) (1976) (current version at 11 U.S.C.A. § 547(e)(1)(A) (1985).

7. *See also Terry v. New York Life Insurance Co.,* 104 F.2d 498, 504–505 (8th Cir.1939); *Security-First National Bank v. United States,* 181 F.Supp. 911, 916 (S.D.Cal.1960) ("A federal trial judge is not bound by the opinion of even his own Court of Appeals, 'in a case which may be differentiated'.") (citing *Terry v. New York Life Insurance Co.*). *Cf. Briggs v. Pennsylvania Railroad Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948) ("inferior court has no power or

authority to deviate from the mandate issued by an appellate court").

8. The trustee urges that *Anderson v. Graham Investment Co.,* 263 N.W.2d 382 (Minn.1978), holds that where no tenant is in possession of property, the rule imposing a duty of inquiry from such possession has no application. While it is true the court indicated that the rule had no application to the facts of that case, I am not persuaded to adopt the interpretation argued for by the trustee. Unlike the present matter, the issue in *Anderson* focused on whether constructive notice of a prior recorded interest should be held to put a reasonable purchaser on further inquiry as to unrecorded interests as well. As to that issue, it would appear that any rule imposing a duty of inquiry from possession would be irrelevant. Moreover, the facts in *Anderson* demonstrated that no one was in possession of the real property.

IT IS THEREFORE HEREBY ORDERED that:

1. The trustee is not entitled to avoid the transfers to the Defendants of vendors' interests in the three contracts for deed at issue herein;

2. The funds on deposit in the bank account at First National Bank of St. Paul together with accrued interest be paid to Defendant Christine Muegge; and

3. All requests for awards of costs and disbursements are denied.